## E. E. PERKINS *v.* J. C. CARRAWAY.

1. CONTESTED ELECTIONS. *Trial in vacation. Appeal.*

   Under Code 1880, §§ 151, 2309, 2608, an appeal lies to the Supreme Court from the decision in vacation of a contested election case.

2. ELECTION PRECINCTS. *Alteration. Supervisors' districts.*

   The commissioners of election alone have power to vary precincts; and change of a supervisor's district does not alter the election precinct, although, contrary to law, the latter is left partially without the limits of the former.

3. SAME. *Change of supervisors' districts. When made.*

   As no change can be made by the commissioners in the precincts within one month preceding an election, none can be made in that time by the board of supervisors in the supervisors' districts to affect the election.

4. SAME. *Duty of commissioners. Conformity.*

   If supervisors' districts are varied a month before an election, the commissioners should make corresponding changes in the election precincts, and cause the registration of voters to be altered.

5. SAME. *Evidence of change. Commissioners' conduct.*

   An order of the board of supervisors changing election precincts to correspond with alterations in supervisors' districts is adopted by the election commissioners if they register residents of the old precincts in the new ones, and permit the election to be conducted on this basis.

6. SAME. *Effect of change. Registration.*

   Voters are not required to register anew in order to conform to a change in the limits of election precincts, but on the register of voters their names should be transferred by the act or authority of the commissioners.

7. SAME. *Change within the month. Voter's ratification.*

   Change in the territorial limits of a precinct within one month preceding an election is void as to voters who disregard the commissioners' action, and valid as to such voters as conform.

8. ELECTION. *Tickets. Too many names.*

   The fact that a ticket contains the names of more persons for constable than could be voted for is no ground for rejecting it as a ballot for assessor. Code 1880, § 136, construed.

9. SAME. *Description of tickets. Names too close.*

   Under Code 1880, § 137, if the names of candidates for the legislature are closer together than the statute prescribes, the entire ticket should be rejected.

APPEAL from the Circuit Court of Hinds County.

Hon. S. S. CALHOON, Judge, did not sit in this case, but Hon. J. B. CHRISMAN presided, by interchange, at the trial in vacation.

In June, 1881, the board of supervisors of Hinds County entered upon its minutes an order that half a township should be taken from the Auburn supervisors' district and added to that of Edwards, and also the further order that the voters of this territory who were previously in the Auburn election precinct should vote in the Edwards precinct. No action was taken by the commissioners of election, but the circuit clerk registered voters of this territory on the poll book for Edwards, and when the books were turned over to the commissioners for revision they registered others of that territory for the Edwards precinct. A few days after, at the election on Nov. 8, 1881, two hundred of such persons voted at Edwards, and the box was for this reason rejected by the commissioners, who returned the appellant as elected to the office of county assessor by a majority of two hundred and eighty-four votes. An opposing candidate, the appellee, who received over two hundred majority at Edwards, including one hundred and seventy-five of the transferred votes, filed this petition, and obtained an order of the circuit judge for a trial in vacation. At the trial a jury was waived. Two hundred and twelve tickets, which were rejected by the commissioners because they contained three names for the office of constable in one supervisor's district, and of which the appellant received eighteen and the appellee one hundred and ninety-four ballots, were counted by the judge over the appellant's objection. In the boxes of the South and West wards of the city of Jackson fifty-eight tickets were found, counted by the commissioners, notwithstanding the fact that the names of the candidates for representatives in the legislature were only one-sixth of an inch apart. These tickets, which were for the appellee, were rejected by the circuit judge, who, however, counted the Edwards' box, including the ballots of the transferred voters, and decided that the appellee received the highest number of legal votes at the election.

*M. Dabney*, for the appellant, argued orally and filed a brief.

The order of the board of supervisors did not have the effect of transferring the voters residing in the controverted territory, for that could only be done by the commissioners of election. Code 1880, §§ 107, 110, 111, 115. Election commissioners are appointed by the State board of registration, supervisors are elected by the counties, and the latter cannot usurp the powers of the former. Legislation respecting the registering of voters is only carrying into execution the fundamental law. Const. art. vii. §§ 2, 3. Voters must know their precincts, and vote there. *Chase* v. *Miller*, Brightly's Lead. Cas. 214. The fifty-eight tickets are void *in. toto*, because they violate Code 1880, § 137. Voting for too many candidates for constable, however, vitiates only the ballot as to that one office. The right of appeal in this case is unquestionable. Code 1880, §§ 151, 2309, 2608.

*M. Green*, for the appellee, argued orally and in writing.

No appeal lies from a judgment in a case of this character rendered in vacation. Appeals can be taken only when authorized by statute, and none is provided for cases like this. Code 1880, § 151. All persons duly registered are entitled to vote in the district of their residence. Code 1880, §§ 107, 142. The commissioners must conform .their districts to the supervisors' districts, otherwise voters will cast ballots for supervisors residing out of ·their districts, which is illegal. Const. art. vi. § 20. The board of supervisors controls the commissioners. Code 1880, §§ 110, 124. In this case the commissioners adopted the books with the registration made by the voters themselves, and having permitted the election to be conducted on that basis, could not afterwards reject the votes. Tickets are illegal if they contain the names of two persons for the same office, and should not be counted. Code 1880, §§ 136, 137. If this be incorrect, then the tickets on which the names are too close must be counted. No distinction exists between the two tickets. Each violates the statute, or neither does.

CAMPBELL, J., delivered the opinion of the court.

The right to appeal from a judgment.rendered in vacation,

on the trial of an issue in a case of a contested election, is very clear.   Code of 1880, §§ 151, 2608, 2309.

Power to change election districts exists only in the commissioners of election, to whom it is entrusted by law.   They are the representatives of the State, which constitutes them for the discharge of the important duties it has confided to them, and the board of supervisors of a county has no authority to change the boundaries of election districts.   It can only cause the action of the commissioners of election, when certified to it, to be entered on its minutes, as a memorial of the change of the districts made by the commissioners to whom alone power to change them is committed by law.   It is true that an election district is required to be the district for the election of a member of the board of supervisors or a subdivision of such district, and that the board of supervisors may at any time alter the districts for the election of supervisors, subject only to the restriction that no change shall be made, within one month of any election to be held in such district ; a restriction which results from the provisions that each election district must be within a supervisor's district, and that no alteration shall be made in the boundaries of an election district, within one month of an election to be held therein, and which can be made effective, only by construing it as modifying the power of the board of supervisors to change the supervisors' districts.   All the statutes relating to the subject must be construed together, and that done, the above is the result. When a change in a supervisor's district is made by the board of supervisors, one month before an election, the commissioners of election should make any change in the election districts which is thus made necessary to conform them to the requirement of the law, and should cause the register of voters to be changed to conform to the change of districts.

It is thus seen that by a change of the supervisors' districts by the board of supervisors a change of election districts may be made necessary, but that change can be made only by the commissioners of election.   They must act in the matter. The board of supervisors may create the necessity for a change of election districts, but cannot change them, and cannot entitle an elector to vote in any other election district than that in

which he resides, and which is established by the action of the commissioners of election. That is the check which exists by law on the power of the board of supervisors, with respect to election districts, and is designed to secure proper co-operation between boards of supervisors and commissioners of elections in the matter of districts. If a change of a supervisor's district *ipso facto* altered election districts the scheme of the State to wield the machinery for conducting elections through its own instrumentalities would be made abortive, and its chosen agencies for that purpose in the several counties would be subordinated to the boards of supervisors, from which power over this subject has been purposely withheld.

In this case, it appears that the board of supervisors ordered the change in the election districts by which the inhabitants of a designated territory were made inhabitants of an election district different from that in which they were before, and this was without any precedent action of the commissioners of election taken and certified to the board, but some of the persons residing in the territory affected by the order of the board of supervisors registered before the circuit clerk for the new district, as made by said order, and the books of registration were afterwards delivered to the commissioners of election for revision, and others of the inhabitants of said territory were registered for said new district by the commissioners of election; and, it is inferable that the commissioners of election arranged in all respects for the election to be held, as if said change in the election districts had been duly made according to law. This was an adoption by the commissioners of election of the change made in election districts by the board of supervisors, and validated it. The right to alter the districts rested with them, and they could exercise it, by resolving on a change, and certifying it to the board of supervisors, or by acquiescing in the action of the board of supervisors, and conforming to it in arranging for the holding of the election. The law does not prescribe how the power of the commissioners of election to establish and alter election districts shall be exercised, but provides that, " If the commissioners of election shall order a change in the boundaries of any of the election districts in the county, they shall at once

cause the register of voters in the election districts affected by such change, to be so changed as to conform to the change of districts, &c." Code 1880, § 110. The next succeeding section prohibits any change in the boundaries of an election district, within one month before an election, and requires any change made to be certified to the board of supervisors, and entered on its minutes. Conforming the register of voters to the change made in the districts, so as " to contain only the names of qualified electors in the election districts, as made by the change of boundaries," is the essential act, and certifying the change to the board of supervisors for entry on its minutes is a means of proclaiming the fact, and perpetuating the evidence of the change ordered.

The law does not contemplate that the voters shall again register, when a change is made in the election districts, but requires the register of voters to be changed, so as to conform to the change in the districts, that is: that the names of persons entitled to vote, as shown by the register, shall be changed from the one district to another on the register, so as to contain only the names of qualified electors in the election districts as made by the change of boundaries. A person once registered is not required again to register, unless he changes his residence to another election district. If the commissioners of election order a change in the boundaries of an election district, they should at once cause the register of voters in the districts affected by the change to be so changed as to conform to the change of districts. This is effected by a transfer of the names of the qualified electors to the proper district on the register, by the act or authority of the commissioners; without a new registration by the elector. Registration for the election district in which one offers to vote is necessary to entitle him to vote. Code 1880, § 142. The control of the registration is vested in the commissioners of election. In case of a change of the election districts, conforming the register of voters to the change made, so that each elector is registered for the election district in which he resides, entitles him to vote in that district. The State has committed the control of registration and elections to the commissioners of election. They are to revise the registration books of the county pre-

paratory to the election, and to erase or add or transfer names of electors, so as to show the names of all qualified electors of the county, and each in the election district of his residence, to the end that each elector qualified to vote may exercise this right according to law. The commissioners of election having the control of the matter exercise it in dealing with the register of voters, for one is a qualified elector under the law only in the district for which he is registered. That determines his right to vote. It is the *sine qua non*, without which he cannot vote. The commissioners of election control the registration, and thereby determine *where* an elector shall be entitled to vote.

The law declares that "no change of the boundaries of an election district shall be made within one month before any election to be held in such district," and that presents the most serious question in this case, for the action of the commissioners of election adopting the change made by the board of supervisors was not taken until within one month of the election held in the district. The object of prohibiting a change within one month of an election to be held is to prevent surprise to the voter, who is entitled to one month in which to learn of the change in the election districts affecting him. In this case the object of the law was accomplished by the action of the voters in securing new registration, and the action of the commissioners of election with respect to the change made, sanctioning it by conforming to it, in their preparation for the election, relieved against the objection as to the change being made within one month of the election. A change made by the commissioners of election in the boundaries of election districts within one month of an election to be held therein would be void as to electors who took no notice of such change, and did not conform to it in casting their votes. They might disregard such a change, and vote as if it had not been made, but in this case the conjoint action of the electors and the commissioners of election removed all objection to the change of the boundaries of districts on the ground of the time when it was made.

We now express our views with respect to the tickets rejected by the commissioners of election because they contained three names for constable, when only two were to

be elected.    The Circuit Court held that it was improper to reject these as ballots for persons for other offices than that of constable, and that the rejection of the ballots should have been confined to the names of the candidates for constable. This is the correct view.  The language of the law (Code 1880, § 136) is, " If any ticket shall contain the names of more persons for any office than such elector had a right to vote for, such ballot shall not be counted."   Why ?   Because in such case it does not appear for whom the elector desired to vote. But the fact that the ticket contains the names of more persons for one office than the elector had the right to vote for does not introduce any element of uncertainty as to another office ; and it is a reasonable interpretation that the general language of the statute shall be restricted, if this can be done without violence, by the limits of the evil against which it was designed as a remedy.   To give it a broader operation would deprive the elector of his vote for persons for many other offices, because he had ignorantly or inadvertently voted for more persons than he was entitled to for one office.   The statute should be so interpreted as to cure the evil it was aimed at, and should not be so applied as to defeat the will of the voter, if its language can be satisfied without such result. Its object is accomplished by the rejection of the ballot as to the office for which there were more persons voted for than the elector had a right to vote for, and no further.   The language of the law is, " If any ticket shall contain the names of more persons for any office than such elector had a right to vote for, *such ballot* shall not be counted."   The ticket is the " scroll of paper " on which is written or printed the names of persons voted for, with a statement of the office for which they are voted for.   The ballot may be the name of the person and office voted for.   If the " ticket shall contain," &c., " such ballot shall not be counted."   This language may have full effect by restricting the exclusion to the names of all persons voted for for that office.   That would be done without the statute, because of the impossibility of determining from an inspection of the ticket who was intended by the elector to be voted for.

Certain tickets were rejected from the count, because the names of persons, who were candidates for the office of repre-

sentative in the legislature, were found to be less than one-fifth of an inch apart. Section 137 of the Code prescribes the kind of tickets to be used, and, among other things, directs that there shall be a space of *not less* than one-fifth of an inch between the names of persons voted for ; and declares that, " a ticket different from that herein prescribed shall not be received or counted." The language is unmistakable and imperative. The preceding section indicates plainly the meaning of the word " *ticket.*" It is " a scroll of paper, on which shall be written or printed the names of the persons for whom he intends to vote." Ballot is sometimes used by the statute to signify ticket, but the latter is never used as synonymous with the former. The " ticket " describes the paper, and names of persons, and the offices for which they are voted for. It includes all. The statute says, " a ticket different from that herein prescribed shall not be received or counted." This applies to the entire " scroll of paper," and excludes it as a whole. The language cannot be satisfied by limiting the exclusion from the count to the ballot for the office in which the vice exists, and we must give effect to the language of the law. It excludes the ticket.

*Judgment affirmed.*