JOHN H. DENNIS, PLAINTIFF AND APPELLANT, v. W. H. CAUGHLIN, DEFENDANT AND RESPONDENT.

1—APPEAL—WHAT TO BE CONSIDERED UPON.—Such errors only as the appellant complains of can be considered upon appeal.

2—AUSTRALIAN BALLOT LAW—BALLOTS—DISTINGUISHING MARKS.— One purpose of the ballot law was to exclude from the count all ballots containing distinguishing marks or marks that may have been placed thereon for the purpose of distinguishing the ballots, but marks satisfactorily appearing to have been inadvertently or accidentally made, and not for an evil purpose, are not within the meaning of the statute, and should not, within the meaning of the statute, be construed as identifying or distinguishing marks. Ballots examined, and distinctions drawn as to what constitute distinguishing words or marks, and what do not.

APPEAL from judgment and order overruling motion for new trial from District Court, Washoe county; *George F. Talbot*, District Judge, presiding.

The facts sufficiently appear in the opinion.

*Thomas E. Haydon* and *Robert M. Clarke*, for Appellant:

The only question in this case is whether John Hayes received more lawful votes than the 561 found by the judge at the trial to have been cast for him for the office. Respondent may attempt to urge errors in the court below against him, but such errors, if any, cannot be considered by this court, as respondent has not appealed. (*Chittenden* v. *Brewster*, 2 Wall. 191; *Martin* v. *Northern Trans. Co.*, 12 Wall. 31; *The Stephen Morgan* v. *Good*, 94 U. S. 591; *Clarke* v. *Killian*, 103 U. S. 766; *Loudon* v. *Taxing List of Shelby Co.*, 104 U. S. 771; *Gage* v. *Pumpelley*, 115 U. S. 454; 14 Cal. 9; 15 Cal. 12, 304, 483; 65 Cal. 639.)

Appellant concedes that upon the lawful construction of the act of the legislature of 1891, pages 40 to 47, the success of his contest in this case entirely depends, and that no ballot cast for him without the water mark upon it can be counted for John Hayes. That where any voter marked more names than one upon his ballot for the office, or where for any reason it is impossible to determine the voter's choice for sheriff, the ballot cannot be counted for Hayes.

The statute being constitutional where it is plain and unambiguous, there is no room for construction; its meaning

must be deduced from its language. (*Browne* v. *Davis*, 1 Nev. 409; *State* v. *Washoe Co.*, 6 Nev. 104; *Odd Fellows Bank* v. *Quillan*, 11 Nev. 109.)

The most liberal decision of the courts declare that if the law itself declares an irregularity to be fatal to the validity of the election, or ballot cast, or thing to be accomplished, the courts must follow that command irrespective of their views of the importance of such requirement. (*Bowers* v. *Smith*, 33 Am. St. Rep. 501; *Ziller* v. *Chapman*, 54 Mo. 502; *Leadbetter* v. *Hall*, 62 Mo. 422; *State* v. *Saxon*, 32 Am. St. Rep. 46.)

If a mark placed by a voter upon his ballot, by which it may be afterwards identified, by some third person, as the ballot voted by such person who voted it by preconcerted agreement with such third person, were forbidden by the act to be counted, which it is not, but is merely punished as a misdemeanor, even then such mark would have to be so distinct that it could be distinguished readily from all other marked ballots; or were such mark intended to be a fac simile, then it would have to be an exact copy of a number or class bribed to so vote and so mark their ballots.

A mark cannot be construed to mean cancelation or erasure, as a mark means something to indicate something else; and a cancelation or erasure means to blot out, expunge, efface or obliterate something that did indicate something before its erasure or cancelation. Mark means to make; erasure and cancelation to unmake.

When lawful voters who have complied, under all the lights before them, with all the substantial requirements of the registry and election laws, our courts from their inception have swept aside all acts of the legislature that placed barriers between the voter and his constitutional right of suffrage. See cases above cited and *State* v. *Board of Ex.*, 21 Nev. 69, 70, 91. Upon the general subject of the spirit in which election laws should be interpreted and executed, see the able opinion of the judges of the supreme court of Maine, sec. 208, pp. 137, 138, McCreary's Election Laws.

Our statute was evidently framed to forbid any marks upon a ballot by which it could be distinguished by others than the voter. (McCreary, secs. 502, 504, 505; *Druliner* v. *State*, 29 Ind. 308; *Napier* v. *Mayhew*, 35 Ind. 276.) Scratch-

ing a name is not a distinguishing mark. ( *Wyman* v. *Lemon*, 51 Cal. 273; *Coffey* v. *Edmunds*, 58 Cal. 521; *Steele* v. *Calhoun*, 61 Miss. 536; *Oglesby* v. *Sigman*, 58 Miss. 502; *Applegate* v. *Egan*, 74 Mo. 258.)

No ballot on which names or words, either written or printed, not provided for in the statute, can be counted. Neither can any ballot be counted upon which any mark appears by which any third person can distinguish who voted it.

[After argument on the particular ballots.]

The foregoing argument is fully borne out by *Bowers* v. *Smith*, 33 Am. St. Rep. 491; *Allen* v. *Glynn*, 31 Am. Rep. 304; 30 Am. St. Rep. 254; 12 Col. 256; 129 N. Y. 395; 11 Am. St. Rep. 767; 32 Am. St. Rep. 46, and notes to all such decisions; 51 Cal. 273; 91 Cal. 526; 51 Am. Rep. 646 and note; 92 Cal. 135, will show that any marks made by lawful voters through ignorance, inadvertence, want of skill, and otherwise, not indicative of bribery, fraud, or corruption, will not prove fatal to the exercise of their constitutional right of suffrage.

*Torreyson & Summerfield*, for Respondent:

In the above appeal respondent has submitted two motions which are now pending, to wit:   (1) To dismiss the appeal upon the ground that the same was not taken within thirty days from the rendition of judgment.   (2) To diminish the record by striking therefrom everything therein contained relating to appellant's motion for a new trial upon the ground that new trials in contested election cases are not authorized nor contemplated by law.

These two preliminary motions are submitted by stipulation upon the exhaustive arguments and briefs made and filed upon the same character of motions in *Lynip* v. *Buckner*, pending in this court upon appeal.

Respondent is entitled to the correction of all errors committed against him in the trial court to which he duly excepted, notwithstanding the fact that he has not taken a cross-appeal.

Courts have always recognized the fact that the general public have as great, if not greater, interest in the supremacy

of the popular voice in elections than have the contestant or contestee for an office. (*Minor* v. *Kidder*, 43 Cal. 237–8; *Searcy* v. *Grow*, 15 Cal. 119; *Lord* v. *Dunster*, 79 Cal. 488; *Budd* v. *Holden*, 28 Cal. 139; McCreary's Am. Law of Election, par. 316; *Mann* v. *Cassidy*, 1 Brewster, 43; *Kneass' Case*, 2 Parsons, 570; *Collins' Case*, Brightley's Election Cases, 513.)

Respondent therefore insists that upon this appeal the court should consider any error committed by the trial court against him to which he duly excepted.

The court erred in rejecting the entire vote of Salt Marsh precinct, of which appellant received three votes and respondent nineteen.

[After argument on Salt Marsh vote.]

Voters may rely on the regularity of ballots prepared by the proper officers. (*Bragdon* v. *Navarre* (Mich.) 60 N. W. 277; McCreary's Am. Law of Election, par. 303; *Kirk* v. *Rhoads*, 46 Cal. 398.)

The Salt Marsh ballots should not be counted for the offices of justice of the peace and constable, but they should be counted for the candidate for sheriff for whom cast by the electors without any fault of their own.

Appellant's contention that a cancelation is not a "mark" is ingenious, but fallacious and without real merit. How a cancelation can be effected without the instrumentality of "marks," appellant does not pretend to explain.

The statute defines the cross which shall be made by designating it as "the cross or X." It is submitted that an "X" in the proper sense of the word, and as it is also made in the statute itself, can contain or consist of no more than *two* intersecting lines.

For a very full and complete decision upon the marking and preparation of ballots the court is respectfully referred to the case of *Ellis* v. *Glaser* (Mich.), 61 N. W. 648.

Respondent submits that *all* of the decisions under the various "Australian ballot laws" of the various states hold that in all matters over which the electors have control the law is mandatory and not directory. In matters over which the voters have no control nothing short of the destruction of the secrecy and the purity of the ballot will warrant rejection.

*Thomas E. Haydon* and *Robert M. Clarke*, for Appellant, in reply:

In many cases in California where an appeal from an order granting or refusing a new trial is dismissed at the same time in the same case there is also an appeal from the judgment, the court will look into the statement on motion for new trial and use it on the appeal from the judgment, and any errors appearing therefrom affecting the judgment may be reviewed and corrected, the statement on motion for new trial being considered and treated as a bill of exceptions. (*Towdy* v. *Ellis*, 22 Cal. 650; *Hanscom* v. *Tower*, 17 Cal. 518; *Louck* v. *Edmonds*, 18 Cal. 203; *Walsen* v. *Murdock*, 53 Cal. 550; *Carpentier* v. *Williamson*, 25 Cal. 154; *Craig* v. *Fry*, 68 Cal. 363; *Scoot* v. *Wood*, 81 Cal. 399; *Somers* v. *Somers*, 83 Cal. 622; *Mix* v. *San Diego*, 86 Cal. 235.)

It will be noted that these decisions are all based on section 950 of the code of civil procedure of California. Our section 340, civil practice, covers section 950, California civil code, in all its substantial requirements and goes further, requiring the written opinion of the judge to be furnished, so adopting the California statute and decisions as published before the enactment of our statutes. (*Hunter* v. *Truckee Lodge*, 14 Nev. 35.)

The foregoing seems conclusive against both motions of respondent.

The court has no discretion to dismiss this case which is prosecuted like any other action instituted by a private citizen subject only to the provision of the statute. (*Searcy* v. *Grow*, 15 Cal. 122.)

Errors against respondent will not be considered on appeal; and the supreme court will only consider such errors as are assigned by the appellant. (*Maher* v. *Swift*, 14 Nev. 324; *Moresi* v. *Swift*, 15 Nev. 215; *Nesbitt* v. *Chisholm*, 16 Nev. 40; *Dougherty* v. *Henarie*, 47 Cal. 9; *Emric* v. *Elvarado*, 90 Cal. 444; *Seward* v. *Malotte*, 15 Cal. 304; *Tavers* v. *Crane*, 15 Cal. 12.)

[Here follows several pages of argument on particular ballots.]

That a distinguishing mark upon a ballot is a marking or embellishing of the ballot which will distinguish it from

others, or convey knowledge of the person who voted it, see sec. 504, p. 340, 2d ed., McCreary on Elections, and note 1. Wigmore's Australian Ballot System, 2d ed., pp. 190, 194, holds that if the mark or irregularity was the result of awkwardness or a stiff, heavy, trembling hand, or of carelessness, or an attempt to correct a supposed defect, or to make a line more clear, or straight, or where it appears that the additions to the cross are owing to unskillfulness, rather than an attempt to identify oneself, the vote in all such cases is held good. Alleyn, J., in case 14, id., holds the marking of the ballot, to invalidate it, must furnish clear evidence of an improper agreement, such as the voter's initials, or a mark known to be his. (Case 17, Benholme, J.) Whenever the mark evidences an attempt or intention to make a cross or an X, it should be counted. (Ritchie, C. J., in case 12.)

It is possible that evidence of a corrupt arrangement should be required to be shown, to invalidate a ballot irregularly marked. Too much precaution disfranchises too many honest voters to exclude a possibly corrupt one. (Wigmore's Australian Ballot System, 2d ed., pp. 192, 194, and many cases cited in appellant's original brief, particularly *Bowers* v. *Smith*, 111 Mo. 45, as reported in 33 Am. St. Rep. 501–3, and note as to construction of election laws, page 510.)

The statute in prescribing the method of preparing a vote uses the indefinite article "a" instead of the definite article "the," consequently any cross or any X complies with the statute. See cases cited and their application in Wigmore, pp. 190 to 194.

By the Court, BELKNAP, J.:

This is a contest brought by John H. Dennis, an elector of Washoe county, against the respondent, to determine whether John Hayes or W. H. Caughlin is legally entitled to the office of sheriff of Washoe county. According to the official returns, respondent received the highest number of votes, and was declared elected by the board of canvassers. At the trial it was stipulated that all returns and all ballots of each and every precinct in the county should be examined and considered, and legal ballots counted for whom cast, and under this stipulation the trial was had. Respondent recovered judgment.

One of the first questions to be determined is whether we can review all the rulings of the district court or only such as have been assigned as error by the appellant. It has frequently been decided that, a party who has not appealed from a judgment cannot, on appeal by the opposite party, obtain a review of the rulings of the court against him. In *Dougherty* v. *Henarie*, 47 Cal. 9, the plaintiff offered to dismiss the action as to one of the defendants, who objected, and the court thereupon denied the motion to dismiss, the plaintiff excepting. Said the court: "But he cannot avail himself of his exception on this appeal. Having submitted to the judgment, and prosecuted no appeal from it, he cannot, on an appeal by the defendant, review the rulings of the court which he claims are to his prejudice." (*Maher* v. *Swift*, 14 Nev. 324; *Moresi* v. *Swift*, 15 Nev. 215; *Nesbitt* v. *Chisholm*, 16 Nev. 40.) Again, in *Whittam* v. *Zahorik*, 59 N. W. 57, the supreme court of Iowa said in an election contest case: "The appellee complains that ballots similar in marking to some of those we hold should have been excluded were offered by the contestant, and counted for him; but, as the incumbent does not appeal, we cannot determine the question he thus presents." Our conclusion is that only such errors as the appellant complains of can be considered upon this appeal.

The errors assigned by the appellant embrace the rulings of the district court upon thirty-two ballots. These rulings involve a construction of the statute of 1891 generally known as the "Australian ballot law." The provisions of the statute relating to the preparation of the ballot by the elector, and its rejection in certain cases, are as follows:

"Sec. 20. On receiving his ballot the voter shall immediately retire alone to one of the places, booths or compartments. He shall prepare his ballot by marking a cross or X after the name of the person for whom he intends to vote for each office. In case of a constitutional amendment or other question submitted to the voters, the cross or X shall be placed after the answer which he desires to give. Such marking shall be done only with a black lead pencil. Before leaving the booth or compartment the voter shall fold his ballot in such manner that the water mark and the number

of the ballot shall appear on the outside, without exposing the marks upon the ballot, and shall keep it so folded until he has voted. Having folded his ballot, the voter shall deliver it to the inspector, who shall announce the name of the voter and the number of his ballot. The clerk having the registry list in his charge, if he finds the number to agree with the number of the ballot delivered to the voter shall repeat the name and number, and shall mark opposite the name the word 'Voted.' The inspector shall then separate the strip bearing the number from the ballot, and shall deposit the ballot in the ballot box. Said strip and number shall be immediately destroyed."

"Sec. 26. In counting the votes any ballot not bearing the water mark, as provided in this act, shall not be counted, but such ballot must be preserved and returned with the other ballots. When a voter marks more names than there are persons to be elected to an office, or if for any reason it is impossible to determine the voter's choice for any office, his vote for such office shall not be counted. Any ballot upon which appears names, words or marks written or printed, except as in this act provided, shall not be counted."

Statutes more or less similar in their nature have been adopted in many of our sister states, and a reference to some will aid in the construction to be placed upon our law.

*In Re Vote Marks*, 21 Atl. 962, the supreme court of Rhode Island said: "A cross is the only mark authorized by the statute to be used to designate the person voted for, and it is only by force of the statute that it gets its significance for that purpose. If another mark be used, there is nothing to certify its meaning. It might be conjectured that it was used inadvertently instead of a cross, but, in our opinion, such a conjecture would not justify the counting of it. The statute declares: 'No voter shall place any mark upon his ballot by which it may be afterwards identified as the one voted by him.' If marks other than crosses were counted, they might be used both to answer the purpose of crosses and to identify the ballots."

In *Whittam* v. *Zahorik*, 59 N. W. 57, in considering a law of this nature adopted in Iowa, the court said: "It is not practicable to adopt a rule in regard to identifying marks

which would be applicable in all cases. It will not do to say that all ballots which bear marks not authorized by law should be rejected. All voters are not alike skillful in marking. Some are not accustomed to using a pen or pencil, and may place some slight mark on the ballot inadvertently, or a cross first made may be clumsily retraced. It is evident that in such cases, and in others where the unauthorized mark is not of a character to be used readily for the purpose of identification, the ballots should be counted; but where the unauthorized marks are made deliberately, and they may be used as means of identifying the ballot, it should be rejected."

In Indiana it was provided that the voter should indicate his choice by stamping a certain square opposite the candidate's name, and, if he desired to vote for all candidates of one party, should place the stamp on the square preceding the party designation. The court held that the provision concerning the use of the stamp was mandatory, the stamping of the square being the only method prescribed by which the voter can indicate his choice. The statute was amended at the next session of the legislature so that a stamp placed upon a ballot which does not touch a square thereon was declared to be a distinguishing mark, and was not to be counted. The court said: "This amendment was intended, we think, to make certain that which, prior to its passage, was left in some measure, to construction; but it only makes certain that which was intended by the legislature when it passed the original section." (*Parvin* v. *Wimberg*, 130 Ind. 561.)

In Maine the statute provides that "the voter shall prepare his ballot by marking on the appropriate margin or place a (X) as follows: He may place such mark opposite the name of a party or political designation; or he may place such mark opposite the name of the individual candidates of his choice for each office to be filled." (Stats. Me. 1891, c. 102, sec. 24.) The court said of this provision: "Its distinguishing feature was its careful provision for a secret ballot. The leading purpose of it was to give the elector an opportunity to cast his vote in such a manner that no other person would know for what candidate he voted, and thus to protect him against all improper influences, and enable.

him to enjoy absolute freedom from restraint and entire independence in the expression of his choice." "If it be conceded that the intention of the voter may be correctly inferred from the mark actually made by him in each of these instances, it is still a fatal objection to the ballot that such an irregular and unauthorized mode of marking it might readily be, and probably would be, agreed upon with the voter as a distinguishing mark to identify the ballot cast by him, whenever identification was desired. Such a palpable disregard of the plain requirements of the act strikes at the root of the secret-ballot system." (*Curran* v. *Clayton*, 86 Me. 42.)

These decisions show that the only way the voter can indicate his choice is by a cross or X, used in the manner required by the statute. The statute of this state is less liberal in its terms than those of the other states, and if its provisions relating to "marks," in the twenty-sixth section of the act, are to be literally enforced, many voters would be disfranchised. This section provides that any names, words or marks, except as in the act provided, shall invalidate the ballot. Under the terms of the statute, any mark, although innocently or accidentally made, would come within its provisions. The evils against which the statute was directed were bribery and intimidation, and to repress these the secret ballot was adopted. Its aim was that the ballot should not disclose by whom it was cast, and for this reason all of the means by which it may be indentified were interdicted.

Courts should construe statutes with such liberality, if practicable, as to advance the object and correct the evils which the legislature had in view. A mark satisfactorily appearing to have been inadvertently or accidentally made, and not for an evil purpose, is not within the meaning of the statute, and should not be construed as an identifying or distinguishing mark; and we think the statute should be read as if this qualification were attached to it. Adopting this view, a ballot written by a hand unaccustomed to the use of a pencil, or awkwardness in its use, or carelessness, or an apparent attempt to retrace a clumsily made cross X, or an effort to make it more certain, and in doing so employing

more lines than are necessary to properly make a cross, or a slightly blurred spot to correct a mistake, not indicating an intention to identify the ballot, or a slight erasure for the same purpose, or cross made when the ballot paper was defective, and to avoid the defect, and make the vote more certain, a second cross was made, or a slight pencil mark, clearly made by accident, and not design, or a stain of tobacco, will not avoid the ballot.

There are fifteen ballots numbered as follows: 45, 49, 50, 78, 68, 73, 74, 53, 27, 72, 59, 75, 40, 36, 66, to which these objections were made, and we think that all of them should be counted for the appellant. But blurred spots, plainly made by a lead pencil, which may have been made for the purpose of canceling a cross, but which might have been made also for identification, or a cross not opposite the name of any candidate, or two or more crosses instead of one, or a number of crosses in a bunch, or a mark not a cross, or the use of a blue lead pencil instead of a black one, or a straight line, thus,   —, over the word "No," or writing a word instead of employing a cross, are grounds for rejecting the ballot.

There are seventeen ballots to which these objections apply, and we think the court properly rejected them. These ballots were numbered as follows:  30, 39, 44, 69, 33, 38, 60½, 71, 41, 48, 66¾, 37, 52, 35, 54, 57, 77.

The district court found that Hayes was entitled to 558 votes, and Caughlin 561. Adding to Hayes' vote the fifteen votes that we have found for him, changes the result of the election.

Similar motions were made in this case as those in *Buckner* v. *Lynip*, 22 Nev. 426, and upon the authority of that case the motions are dismissed.

Judgment reversed and cause remanded for a new trial.

BONNIFIELD, J.:   I concur.

BIGELOW, C. J., concurring:

As held in *Buckner* v. *Lynip*, 22 Nev. 426, the spirit and purpose of the ballot law was to exclude only ballots bearing distinguishing names, words, or marks, and not those where it satisfactorily appears that the marks were not intended for distinguishing marks and were not placed thereon

with the knowledge or consent of the voter. Doubtless, in the first instance, the presumption should be that all marks not authorized by law were placed thereon for the purpose of identification, and, in the absence of satisfactory evidence to the contrary, should exclude the ballot from the count. But clearly it was not the intent of the lawmakers that marks that do not identify the particular ballot, or that clearly appear to have been accidental or inadvertent, as where made by the slip of a pencil, by soiled fingers, through awkwardness in making the cross, or by other unintentional means, and that are not such as to be readily used for purposes of identification, should cause the rejection of the entire ticket.

On the other hand, where the marks were apparently made intentionally, and are such as to readily distinguish the ticket, and such as may have been made for the purpose of distinguishing it, it should not be counted.

Of course, this rule calls for the exercise of some discretion in the canvassers, and is not so simple as it would be to follow the letter of the law, and reject all ballots upon which any unauthorized mark appears; but we believe it to be more in consonance with the spirit of the statute and with the genius of our institutions. Our government is founded upon manhood suffrage, and in the effort to prevent intimidation and corruption in the elections, although a most commendable purpose, and one we would encourage by every means possible, it will not do to adopt rules so strict as to practically disfranchise a considerable number of innocent voters. This would be too heroic a remedy. If the sole, or even the main, purpose be to prevent fraud in the elections, this could be best accomplished by permitting no one to vote.

The marking upon a ballot may be such as to prevent its being counted for a particular candidate upon two grounds: Where it is not so marked as to indicate the voter's choice as to that office, and where it bears distinguishing marks. Upon the first ground, no other mark than that of a cross or X, placed after the candidate's name, will suffice; but a failure to mark upon some office, or a defective marking, should not usually be classed as a distinguishing mark. Probably a cross or an X could be so made as to constitute an identify-

ing mark, but we should be very certain that such was the purpose before we would be justified in rejecting the ballot on that ground. The statute recognizes that .there may be defective marking upon some particular office that is still not sufficient to reject the entire ballot, by providing that when, for any reason, it is impossible to determine the voter's choice for any office, his vote for that office shall not be counted. All men do not make crosses and X's alike, nor do all possess the same degree of skill in making them. It would seem that any honest attempt to make the proper mark, and nothing else, even if insufficient to authorize counting the vote for that candidate, should not be treated as sufficient to cause the ballot's rejection.

The following examples will illustrate the distinctions we think should be drawn: Ballot No. 27 has a faint cross, very nearly erased, opposite the name of McNees, another candidate for the same office. It was evident that this mark was made inadvertently, and that the voter sought to change his vote from McNees to Hayes. .It is perfectly clear for whom he wished to vote, and, as the faint outline of the cross does not constitute a distinguishing mark, no reason appears why it should not be counted as intended. No. 49 has a mark opposite the name of a state candidate intended for an X, but the second stroke only comes down to, but does not cross, the first. While this was a failure to make a cross, so that probably the vote should not have been counted for that candidate, it was clearly unintentional. Had the second stroke been extended the thirty-secondth part of an inch, it would have been a cross. No. 50 has a light third line across the X opposite the name of a state candidate, doubtless made through accident or carelessness. No. 53 has a light mark, apparently made by a dirty finger, or in an attempt to erase a cross in a square, but which was again made and allowed to remain. No. 73 has crosses made with lines across the top and the bottom of the X's, intended to be the same as the X is made in the statute. As the act does not provide how the cross shall be made, we do not see why that is not as correct as one made simply with two straight lines crossing. We think that such ballots as these, and similar ones, should be counted.

On the other hand, No. 35 has in two places a number of crisscrossed lines nearly filling a square. No. 37 has the printed word "No" crossed out with a pencil. No. 38 has crosses not opposite the name of any candidate. No. 39 has a heavy round spot, made with a pencil, apparently for the purpose of covering up or blotting out a cross in a square opposite the name of a candidate. Very likely in all these instances, the marks were made innocently, and not for the purpose of distinguishing the tickets; but they were made intentionally, and not by accident or inadvertence, and are such as might have been placed there for identification. They were, therefore, properly rejected.

All questions concerning the manner of making a cross, or of where it shall be placed, can be avoided, and an advantageous change made in the law, by the legislature adopting an amendment providing for the use of a rubber stamp instead of a lead pencil, as is directed by the statutes of Indiana and some other states.

I concur in the conclusions announced by Justice BELKNAP as to the ballots that should or should not be counted.