W. A. Cross *v.* R. M. Keathley.

(*Knoxville.*   September Term, 1907)

1.   **ELECTIONS.**  **Distinguishing marks rendering ballots void
under uniform ballot law.**

Ballots containing, in addition to the matter prescribed by the
uniform ballot law (Acts 1891, ch. 21), certain dotted lines and
solid black lines, and before the name of each office to be filled
the word "for," and after the words "justice of the peace" the
words "vote for two," and after the words "school directors"
the words "vote for three," contain distinguishing marks, signs
or insignia not authorized, but prohibited by, the statute,
which render the ballots void.

Acts cited and construed:    Acts 1891, ch. 21.

Numerous cases in other States cited and approved in the opin-
ion of the court, on pages 577-581.

2.   **SAME.**  **Ballots are not invalidated by being clipped after they
were voted and thus reduced below the prescribed size.**

Ballots of the size required and prescribed by the uniform ballot
law (Acts 1891, ch. 21, as amended by Acts 1893, ch. 101), when
they were voted, cannot be invalidated by being clipped after
they were voted, nor should they be rejected because they
were clipped after they were voted.   (*Post, pp.* 571, 575.)

Acts cited and construed:    Acts 1891, ch. 21; Acts 1893, ch.
101.

---

FROM SCOTT.

---

Appeal from the Circuit Court of Scott County.—
G. Mc. HENDERSON, Judge.

JAMES F. BAKER and TEMPLETON & TEMPLETON, for Cross.

E. G. FOSTER, D. JEFFERS, WILLIAM YORK, and JAMES A. FOWLER, for Keathley.

MR. JUSTICE NEIL delivered the opinion of the Court.

This case involves a contested election for the office of register of Scott county. The original petition was filed by W. A. Cross in the county court of Scott county, on the 7th day of August, 1906. After alleging that the petitioner was qualified to hold the office of register of Scott county, and that he was a candidate for this office, at the August election, 1906, and that his opponent was R. M. Keathley, it was alleged, in substance, that there were cast in the election 2,016 votes, of which the petitioner received 1,012, while the contestee Keathley received only 1,003, leaving the petitioner a majority of nine votes, but the election commissioners wrongfully refused to count the returns from the Eleventh district, from which the petitioner received thirty-three votes, while the contestee received only sixteen and that by rejecting these returns the contestee was declared to have a majority of the votes cast, and the certificate of election was by the commissioners of election issued to him.

In August, 1906, the contestee filed his answer, in which he admitted that the election commissioners refused to count the returns from the Eleventh district,

but denied that their conduct in so doing was illegal and improper, and insisted that these votes were rightly rejected and should not now be counted.  The contestee further alleged that 361 ballots were cast for petitioner, Cross, which were illegal and should not have been counted by the election commissioners and should now be thrown out, because upon each of these ballots before the name of each office there was printed the word "for," and there was also printed upon each of them, and extending more than three-fourths of the way across the ballot, three or more dotted lines, and there was also printed, extending from one-third to one-half the way across the ballot, three or more heavy black lines or marks.  It was averred that these marks, and the placing of the word "for" in the manner just related, were in violation of the uniform ballot law.

It was further alleged that 156 ballots were cast and counted for petitioner, Cross, which were illegal, and should have been rejected, and should now be excluded, because these ballots had, likewise, printed before the name of each office the word "for," and because there were printed upon each of said ballots, and extending more than three-fourths of the way across, eight or more broken lines or marks, and there were also printed upon said ballots, and extending from one-third to one-half the way across, three or more heavy black lines or marks, and after the words "justice of the peace" there were printed the words "vote for two," and after the

words "school directors" there were printed the words "vote for three."

The number of each of the ballots cast at each precinct, except for the First and Twelfth districts, was particularly alleged, and a sample of each of the said ballots was attached to the answer, marked, respectively, "Exhibit A" and "Exhibit B."

It was also alleged in the answer that there were sixty-four ballots counted for petitioner, Cross, which were less than $6\frac{7}{8}$ inches in length, and one ballot was counted for him which was less than $2\frac{2}{16}$ inches in width; that of these ballots thirty were deposited in the ballot box in the Sixth district, an thirty-four were deposited in the ballot box of the Winfield district; and that the thirty ballots which were cast in the Sixth district were also illegal on account of the marks and words above described. It was insisted that all of these ballots, for the reasons mentioned, should be rejected.

On August 21, 1906, the petitioner filed an amended petition, in which, in addition to the grounds of contention relied upon in the original petition, he alleged that twenty-eight persons whose names were given and who had voted for contestee, Keathley, in the Fifth district, were not citizens of Scott county, and were therefore not entitled to vote. On August 26, 1906, the contestee filed an answer to this petition, in which he denied that portion of the allegation in reference to the persons voting in the Fifth district.

In the county court the case was decided in favor of

the petitioner or contestant, and judgment rendered accordingly. From this judgment an appeal was prayed and prosecuted to the circuit court. In the latter court, the judgment of the county court was affirmed; it having been held by his honor the trial judge that the returns from the Eleventh district should be counted, and that the classes of ballots which had the marks or lines and the superfluous words alleged in the contestee's answer were not for that reason invalid; that the short and narrow ballots had been clipped after being voted, and consequently were properly counted; and that the persons mentioned in the amended petition as having voted for contestee in the Fifth district were not citizens of Scott county and were not legal voters. On these grounds, as stated, judgment was entered in favor of the petitioner, contestant, Cross.

From the latter judgment, after motion for a new trial had been made and overruled, an appeal was prosecuted to this court by the contestee, and errors have been here assigned.

The errors assigned are as follows:

"(1)    The court erred in counting for contestant the thirty-four short ballots, and the one narrow ballot from the Winfield precinct in the Eighth district, and the thirty short ballots in the Sixth district. He should have held that said ballots were invalid, because when voted they were of less length, and the one ballot was of less width, than as required by law.

"(2)    The court erred in refusing to reject the 361

ballots which were cast for Cross in the several districts alleged in the contestee's first answer, and which had printed thereon, before the name of each office, the word 'for,' and also had printed thereon, and extending more than three-fourths of the way across said ballot, three dotted lines or marks, and also extending one-third to one-half of the way across said ballot three heavy black lines or marks. The court should have held that said words and marks rendered said ballots invalid.

"(3) The court erred in refusing to reject the 156 ballots which were counted for Cross in the several districts alleged in the contestee's first answer, which had printed thereon, before the name of the office to be filled, the word 'for,' and also after the words 'justice of the peace' the words 'vote for two,' and after the words 'school directors' the words 'vote for three,' and also had printed thereon, and extending about three-fourths of the way across the same eight broken lines or marks, and extending from one-third to one-half of the way across the same, three heavy black lines or marks. The court should have held that on account of the presence of said words and marks on said ballots the same were invalid.

"(4) The court erred in excluding from the votes counted for contestee the twenty-eight ballots which were cast for him and counted by the election officers in the Fifth district. The court should have held that, said votes having been received and counted by the election officers, the presumption was that they were

legal, and that there was not sufficient evidence intro-duced upon the subject to overcome this presumption.

"(5)   The court erred in setting aside the action of the election commissioners in refusing to count the votes from the Eleventh district, and in now permitting said votes to be counted and considered in making the final result of said election."

The questions raised by assignments Nos. 1, 2, and 3 arise under the uniform ballot law (chapter 21, p. 42, Acts Ext. Sess. 1891), and in an amendment thereto (chapter 101, p. 208, Acts 1893).

The first act (omitting the caption and the enacting clause) reads as follows:

"Section 1. That in all elections in the State of Ten-nessee, whether national, State or county, or municipal, except where the provisions of the act approved April 4, 1889, being chapter 188 of the printed Acts of 1889, and the acts amendatory thereof apply, the ballots to be voted shall be of plain, white paper, seven inches long and three inches wide, upon which the office to be filled, with the name or names to be voted for, shall be plainly written or printed.

Sec. 2.   That it shall not be lawful to print or place any picture, sign, color, mark, index or insignia thereon, and any ballot of less or greater dimensions than as provided in the first section of this act, or any ballot upon which said picture, sign, color, mark, index or insignia may be placed, if found in the ballot box shall

not be counted by the judges holding said election, but shall be treated as invalid.

"Sec. 3.    That it shall not be lawful for any person to give, offer or impose upon any elector exercising or in contemplation of exercising the elective franchise at any election in this State any ballot other than is provided as aforesaid; and any person so offending shall be guilty of a misdemeanor, and on conviction, shall be fined not less than twenty-five nor more than fifty dollars, and imprisoned ninety days in the county jail or work-house.

"Sec.    4.    That any officer holding said election who shall knowingly receive, or the judges thereof who shall count any ballot other than as provided in the first section of this act shall be also guilty of a misdemeanor, and on conviction thereof shall be punished as provided in the third section of this act.

"Sec. 5. That the grand juries of this State are hereby given inquisitorial power touching offenses committed under this act.

"Sec. 6.    That all laws and parts of laws in conflict with this act be and the same are hereby repealed, and that this act take effect from and after its passage, the public welfare requiring it."

Chapter 101 of the act of 1893 amends the first section of the above-mentioned act of 1891 so as to provide "that the ballots to be voted shall be of plain, white paper, three inches wide and seven inches long; provided that they shall not deviate more than one-eighth of an

inch in length and one-sixteenth of an inch in width."

If the ground of the circuit judge's action in respect of the question presented by the first assignment is sustained by the evidence, of course, his conclusion in respect of that matter, was correct; that is, if the ballots were clipped after they were voted, this certainly could not invalidate the action of the election officers in counting them. Nor could it justify the circuit judge or this court in throwing them out in the present contest. However, in the view we take of this case, we find it unnecessary to decide the question of fact. We also are of the opinion that it is unnecessary to decide the questions raised by the fourth and fifth assignments, since we are of the opinion that the controversies presented by the second and third assignments are decisive of the case.

We shall therefore confine this opinion to the consideration of the two assignments last mentioned.

We have been referred by counsel to numerous cases from other States construing more or less similar statutes enacted by the legislatures of those States. These decisions, many at least, can be of little service to us, further than to warn us of the confusion which necessarily arises when an attempt is made to give what may be called an equitable construction to such statutes, rather than one which seeks to rigidly enforce the policy evidenced by their enactment. It would be an unnecessary waste of time to attempt an examination of a title of these cases. We shall refer, in the course of what follows, to a few of these decisions which seem to us

to be especially apposite to the controversy now before the court; but we shall base our conclusion wholly upon what we deem to be a proper construction of our own statute in the light of the policy of such legislation.

It is manifest from the stringent provisions concerning the length and width of the ballot, and the careful and exact language of the amendment in respect thereto, that it was the purpose of the legislature that the provisions of the act should be obeyed with exactness. This purpose likewise is shown in the sections providing for criminal responsibility.

It was the clear purpose of the legislature that the ballots should be of a specified length—no longer and no wider than prescribed—except a little play allowed for the shrinking of the paper after drying, as shown in the amendment. It was its purpose that these ballots should be on plain, white paper, and that they should have nothing on them except the name of the office to be filled and the name or names of the candidates voted for. The rules thus laid down in the statute are clear and explicit, and may be easily complied with. They can be understood by voters of all degrees of intelligence; no speculation is needed; no fine-spun distinctions; no subtle reasonings. If we depart from this plain path, and digress into controversies whether from this or that extraneous feature appearing in the ballots the intention of the voter can be gathered, or whether this or that extraneous matter renders the intention of the voter uncertain, as some of the decisions do, we at once render

uncertain that which was clear, definite, and precise, and lay the ground for endless controversies.

We are of the opinion that the policy underlying our statute can be best served by adhering as nearly as possible to a literal construction.

Assignments Nos. 2 and 3 set forth correctly the contents of the record upon the subjects therein referred to, except that the lines referred to as heavy black lines are more accurately described as solid black lines.

We think it clear that the broken or dotted lines and the solid black lines referred to in these assignments were marks of a kind which render these ballots void under the act of 1891. We are also of the opinion that the words "vote for two," and the words "vote for three," appearing upon the ballots mentioned in the third assignment, were such signs, marks, or insignia as likewise rendered those ballots void.

We are likewise of the opinion that the use of the word "for" in the manner stated in the second and third assignments rendered all the ballots referred to in those assignments void.

We shall now refer to two or three decisions stating similar views.

The Mississippi statute provides that: "All ballots shall be written or printed with black ink with a space of not less than one-fifth of an inch between each name, on plain white news printing paper, not more than two and one-half, nor less than two and one-fourth inches

wide, without any device or mark by which one ticket may be known or distinguished from another, except the words at the head of the tickets; but this shall not prohibit the erasure, correction or insertion of any name by pencil mark or ink upon the face of the ballot; and a ticket different from that herein prescribed shall not be received or counted."

In *Oglesby* v. *Sigman,* the ballots in question in that case had under the heading "Republican National Ticket" a printer's line or dash rule of slightly ornamental character, and at three other distinct places a name, a dash rule; two of them being plain. It was held that they vitiated the ballots, as marks by which one ticket might be distinguished from another. 58 Miss., 502.

In *Steele* v. *Calhoun,* a printed dotted line between the last office named on it and the preceding name was held to invalidate the ballot; the court affirming that it was not permitted to distinguish between the different devices or marks put on ballots. 61 Miss., 556.

In another case, tickets were rejected because the names of the candidates for the legislature were found to be less than one-fifth of an inch apart. *Perkins* v. *Carraway,* 59 Miss., 222.

Other instances of a similar rigid construction may be found in the following cases:

In *State, ex rel. McMillan,* v. *Sadler,* 25 Nev., 131, 58 Pac., 284, 83 Am. St. Rep., 573, it was held that ballots with equation marks between the printed names of the

candidates and the party designation were invalid.  In *People, ex rel. Beasley,* v. *Sausalito,* 106 Cal., 500, 39 Pac., 937, it was held that a ballot on which the marks were made with a lead pencil, and not with the official stamp, as required by statute, should be excluded.  In *People, ex rel. Obert,* v. *Bourke,* 30 Misc. Rep., 461, 63 N. Y. Supp., 906, it was held that ballots marked with a purple lead pencil, instead of a black pencil, as required by the New York election law, were invalid.  It has also been held in other cases that ballots marked with ink, or with blue or purple pencils, instead of black lead pencils, as required by statute, are invalid and cannot be counted.  *State, ex rel. McMillan,* v. *Sadler,* supra; *Dennis* v. *Cauglin,* 22 Nev., 447, 41 Pac., 768, 29 L. R. A., 731, 58 Am. St. Rep., 761.

In *Van Winkle* v. *Crabtree,* 34 Or., 462, 55 Pac., 831, it was held that ballots on which the word "voted" or "voted for" were written after the name of a candidate contained distinguishing marks by which they might be identified, and should not be counted.  In *State, ex rel. Baxter,* v. *Ellis,* 111 N. C., 124, 15 S. E., 938, 17 L. R. A., 382, it was held that ballots marked on the outside with the letters "O. K." in lead pencil could not be counted.  In *State, ex rel. Orr,* v. *Fawcett,* 17 Wash., 188, 49 Pac., 346, it was held that ballots on which were written across the amendments the words "rats," or "don't want any king," should be excluded.  In *Mauck* v. *Brown,* 59 Neb., 313, 81 N. W., 313, it was held that a ballot marked with a cross in a party circle, and con-

taining the word "against" written under the name of a candidate for an office of another party, and the word "for" written under the name of a candidate for the same office of the party in whose circle the cross was made, contained identifying marks within the prohibition of the Nebraska statute, and should not be counted.

In *Fields* v. *Osborne,* 60 Conn., 544, 21 Atl., 1070, 12 L. R. A., 551, it was held that the word "for," appearing before the name of the office on all the ballots used in the election, did not invalidate them, on two grounds: First, because the statute was ambiguous, and it could not be clearly determined whether the use of this word was improper; and, secondly, because it was used generally upon the tickets of both parties. Concluding the discussion of the question, the court said: "If the regular ballots issued by a political party contain the word 'for' before the title to the offices therein named, then it cannot be held to be a mark or device, so that the same can be identified in such manner as to indicate who might have cast the same, and therefore is not obnoxious to that provision. If the regular ballots of the political party omit the word 'for,' then the use of the word on some of the ballots cast, inasmuch as it would be a mark or device by which the same might be identified, would be irregular. Each case must be governed by its own circumstances, and be decided as a question of fact under the principles herein stated."

In the later case of *State, ex rel. Phelan,* v. *Walsh,* 62 Conn., 260, 21 Atl., 1, 17 L. R. A., 364, 369, *Fields* v. *Osborne* was followed without comment. Even under

the case of *Fields* v. *Osborne* the use of the word "for," in the present case would make the ballots void, because they were only a part of the ballots used in the election and were distributed all over the different voting precincts, as follows: Of the kind within the second assignment there were four votes in the Second district, at Huntsville; at Helenwood there were seven, in the same district; in the Third district, at Glenmary, there were sixty-four, and at Robbins there were twenty-five, in the Fourth district there were ten; in the Sixth district there were 32; in the Seventh there were twenty-eight; at Oneida, in the Eighth, there were eighty-seven; at Winfield, in the Eighth, there were twelve, in the Ninth district there were six; in the Tenth district fifteen, in the Eleventh district there were twenty, and in the Thirteenth there were fifty-one.

Of the kind of ballots described in the third assignment there were eight votes at Helenwood in the Second district, and eight at Glenmary in the Third district, and at Robbins in that district eighteen; and there were ten in the Fourth district, nineteen in the Sixth district, twenty-two in the Seventh district, thirty in the Eighth district at Oneida, one at Winfield, sixteen in the Ninth district, three in the Tenth district, three in the Eleventh district, fifteen in the Thirteenth district, and three in the Fourteenth district.

We deem it unnecessary to state the reasons underlying the passage of the act in question, further than that it was to prevent fraud. What the various devices of fraud may be no man can forecast. We deem it unwise

to further confine the act, but if the purpose of the act was to check, among other devices of fraud, that of bribery and intimidation, and as a means thereto rendering impossible methods of identification, then it is clear that the use of any of the marks mentioned, or any of the words mentioned, might be a device of identification. Of course, as the number of the ballots so used increases, the opportunity for identification is lessened. Still the law cannot be administered on such basis, because it would be impossible to say at what number the capacity to identify would end. The question must be decided on the quality and capability of the word or device, rather than upon any such consideration as the number of persons who may make use of it. A rule based on the number that might be used would be wholly impracticable and incapable of administration.

On the grounds stated, we are of the opinion that the 361 ballots mentioned in the second assignment, and the 156 mentioned in the third assignment, were improperly counted for the petitioner, contestant, and that the circuit judge committed error in holding to the contrary, and the judgment must be reversed.