[No. 2457. Decided June 22, 1897.]

THE STATE OF WASHINGTON *on the Relation of Edward S. Orr, Respondent,* v. ANGELO V. FAWCETT, *Appellant.*

STATEMENT OF FACTS — SUFFICIENCY OF — ELECTIONS — MARKING BALLOTS — STATUTES — DIRECTORY PROVISIONS — REPEAL BY IMPLICATION.

Whether or not a statement of facts is properly certified is an immaterial matter, when the findings of fact and conclusions of law are sufficiently full to give the appellate court an understanding of the merits of the case.

The laws of this state, directing the manner of voting under the so-called Australian system, must be regarded as directory rather than mandatory in their provisions, since Gen. Stat., § 413, provides that " no ticket shall be lost for want of form, if the board of judges can determine to their satisfaction the person voted for and the office intended," and Laws 1895, p. 393, § 10, provides that " when a ballot is sufficiently plain to gather therefrom a part of the voter's intention, it shall be the duty of the judges of election to count such part."

Ballots are not invalidated by failure to strictly comply with the statutory directions for marking them, under the liberal rule for arriving at the voter's intention allowed by our statutes; but, when the markings are evidently intended for the purpose of expressing the voter's intention, the ballot should be counted.

Under this rule, ballots are entitled to be counted although having a X to the left, instead of the right, of the name of the candidate voted for; when having a double XX opposite a name; when having a X opposite names of candidates of one party and lines drawn through names of opposing candidates; when having a X opposite one candidate and an obliterated X opposite the opposing candidate; when having pencil marks run through lines of amendments submitted, or a X over all of them, or the words " no," " yes," " against," " for," written opposite.

Under Laws 1895, p. 393, § 11, providing that " no ballot shall bear any impression, device, color or thing designated to distinguish such ballot from other legal ballots or whereby the same may be known or designated," ballots cannot be counted when they have written thereon the names of individuals who are not

candidates or such expressions as "rats" and "don't want any king."

Sec. 413, Gen. Stat., providing that "no ticket shall be lost for want of form, or mistake in initials of names, if the board of judges can determine to their satisfaction the person voted for and the office intended," is not repealed by implication by the act of March 21, 1895 (Laws 1895, p. 386), relating to elections, as such act does not purport to be a complete law upon the subject, but confines itself to amending certain specified sections of the General Statutes upon that subject.

Appeal from Superior Court, Pierce County.—Hon. W. H. PRITCHARD, Judge. Reversed.

*Ben Sheeks,* and *Hugh Farley (John Paul Judson,* of counsel), for appellant.

*Murray & Christian (P. C. Sullivan,* and *J. S. White-house,* of counsel), for respondent.

The opinion of the court was delivered by

DUNBAR, J.—This was an information filed against the appellant Fawcett by the relator Orr, charging Fawcett with the usurpation of the office of mayor of Tacoma. Appellant and respondent were opposing candidates for mayor at a regular election. The votes had been counted and a certificate of election had been given to Fawcett, who qualified and entered upon the duties of the office. It was alleged by the relator that by reason of the misconduct of some of the election officers certain of the ballots which had been cast should have been counted for him and had not been so counted, and that certain other ballots had been wrongfully counted for Fawcett, and it was asserted that upon a correction of these errors it would appear that the relator and not Fawcett had been elected. The court below found in favor of the relator, and gave judgment against Fawcett ousting him from said office. From such judgment, after a motion for a new trial had been made and overruled, an appeal is brought to this court.

The respondent has moved to strike the brief and statement of facts for the reason that the brief assigned no errors and that the statement of facts was not properly certified.    Without entering into an extended discussion of this motion, which was vigorously prosecuted, we think that the matters in contention are sufficiently stated in the brief, and that the statement of facts is not material to the controversy, as the findings of fact by the court and the conclusions of law are sufficiently full to give the court an understanding of the merits of the case.    So that the real question is, are the conclusions of law sustained by the findings of fact?

The three questions which are raised by the brief for the determination of this court are: (1) In an information in the nature of *quo warranto* is the defendant, as a right, entitled to a jury trial.    (2) In such a case to try the title to a public office, can any of the ballots be counted when it appears that those from certain precincts are missing? (3) Did the court err in determining that certain ballots were void, and from certain others the intention of the voters could not be ascertained?

The first contention has been decided by this court adversely to appellant's claim in the case of *State, ex rel. Mullen, v. Doherty,* 16 Wash. 382 (47 Pac. 958).

The authorities on the second proposition have been so meagerly collated and presented that we think the court is justified in not passing upon that question, especially inasmuch as the conclusion which we have reached on the third proposition decides this case adversely to the interest of the relator.

The ballots, as counted by the inspectors and judges, were 5,364.    2,683 of these ballots were counted for Fawcett and 2,681 for Orr, which resulted in the announcement of Fawcett's election by a majority of two.    The

court counted 5,233 ballots, 2,624 for Orr and 2,609 for
Fawcett, resulting in the announcement of Orr's election
by fifteen majority.  A great many findings of fact and
conclusions of law are presented in the appellant's brief,
which are not objected to in any way, and conclusions
reached by the court are presented, which conclusions were
accepted by appellant as correct, so it has been with some
difficulty that the court has been able to discover the con-
clusions upon which this controversy is based.  Conclusion
6 is as follows:

" The court concludes as to ballots numbered 10, 22, 23,
46, 48, 65, 71, 72, 74, 80, 83, 98, 107, 110, 111, 119,
120, 121, 124, 127, 138, 142, 144, 145, 148, 151, 182,
186, 193, 198, 200, 227, 231, 234 and 243, that said bal-
lots and each of them are marked at a place not authorized
or permitted by law.  That the voter in these cases has
failed to express his intention; that said marks constitute
distinguishing marks, whereby the ballots could be dis-
tinguished from other legal ballots; that the intention of
the voter could not be ascertained from any of the said
ballots and that said ballots and each of them are illegal
and void and could not be counted for any person for the
office of mayor."

These ballots were in all respects perfect excepting that
the cross was placed to the left of the names voted for, in-
stead of to the right.  Fourteen of these votes were cast
for Orr and twenty-one for Fawcett.  It follows that if
they were improperly rejected Fawcett should have an ad-
ditional credit of seven votes, and we think they were
erroneously rejected for reasons which we will refer to
hereafter.

The eighth conclusion of law is as follows:

" That the pencil marks other than the mark ' X ' appear
on the following numbered ballots, to-wit: 5, 27, 45, 50,
53, 57, 86, 87, 94, 95, 103, 112, 113, 114, 116, 128,

130, 131, 150, 155, 159, 160, 179, 180, 194, 197, 199, 232, 236 and 239, are such marks and things as are inhibited by § 11 of ch. CLVI of the Laws of 1895 and are such marks as would distinguish such ballots and each of them from other legal ballots and that said ballots and each of them are invalid and void and cannot be counted for any person for the office of mayor."

As a sample of these rejected ballots, the finding of the court in relation to ballot 103 was as follows:

" Ballot 103 was cast in the fourth precinct of the third ward. It is marked with a character ' X ' to the right of the names Faweett, Ovington, Metcalf, Quevli and Hannah, with a black pencil. Horizontal black pencil lines have been drawn through each of the names of Orr, Sternberg, Benham, Allen and Bell. Upon that part of the ballot providing for voting for and against amendments to city charter, ten long heavy lines have been made with a pencil composed of blue coloring matter."

And the finding in relation to ballot No. 232 was as follows:

" Ballot No. 232 was cast in the first precinct of the seventh ward. It is marked with an ' X ' opposite each of the names of Fawcett, Ovington, Metcalf, Quevli and Link, and a straight lead pencil mark was drawn through each of the words ' mayor,' ' Edward S. Orr,' ' Wm. A. Sternberg,' ' Edgar V. Benham ' and ' Hamilton Allen,' "

The finding in relation to ballot 239 is substantially the same; and ballot 199 was like the others, excepting that it was marked with two characters " XX " at the right of each of the names of Fawcett, Sternberg, Metcalf, Quevli and Hartman, and two characters " XX " to the right of each place provided for voting on each of the amendments to the city charter—amendment No. 1 to amendment No. 21, inclusive. These are substantially the objections to the ballots rejected by this conclusion. These ballots, if

counted, would have given seventeen votes to Fawcett and ten to Orr, and as we think they should have been counted, Fawcett should be credited with seven votes additional, so far as the eighth conclusion of law is concerned.

The ninth conclusion is as follows:

"That ballots numbered respectively 24, 26, 38, 40, 58, 70, 73, 76, 79, 84, 109, 115, 118, 125, 129, 135, 154, 161, 169, 171, 178, 189, 201, 226, 228, 229 and 245 each bear upon its face written language which is not authorized or permitted by law. That each bear some impression, device, color or thing designated to distinguish such ballot from other legal ballots. That each of said ballots bears some device, color or thing whereby it might be designated and distinguished from other legal ballots; that each of said ballots bears written language which is inhibited by law; that each of said ballots are illegal and void and cannot be counted for any person for mayor."

The finding of the court in relation to rejected ballot 189 was as follows:

"That ballot No. 189 was cast in the 3rd precinct of the fifth ward and is marked to the right of the name of A. V. Fawcett with two crosses being about 1 1-2 inches apart, and also marked with an 'X' to the right of the words Ovington, Metcalf, Quevli and Hartman, and also marked with an 'X' to the right of 'For amendment No. 10,' that at the words 'Against amendment No. 19' two horizontal pencil marks are made through the words 'Against amendment No. 19,' that to the right of the words 'Against amendment No. 19' the word 'No' is written with a lead pencil, and to the right of that written and in the same blank space with it is also made a character 'X'; that upon said ballot and to the right of and opposite the words 'For amendment No. 1,' appears the following words in lead pencil: 'Don't want any king.'"

Ballot 73 had the word "rats" written on the amendments.

Ballot 58 had the name of J. M. Houser marked upon
13—17 WASH.

the margin, and ballot 26 had the name of Jacob Wurth marked on the margin.

· These four ballots, we think, were properly excluded by the court, for the words written were not so written with any intention on the part of the elector to express his choice of a candidate. They were not honest mistakes and showed a frivolous and wanton disposition on the part of the elector to disregard the election laws. The rest of the ballots, however, under this finding, we think were erroneously rejected. The words or signs which the court objected to were generally the word " no " after amendments, or " for " after amendments, or " against " or " yes " and pencil lines which were evidently made with the intention of making plain the expression of the voter. One ballot had a cross to the right of the name " Fawcett " and a cross to the right of "Orr," and the cross to the right of Orr was penciled over and obliterated. This was ballot 164, and the finding was that the cross was made to the right of each of the words " Fawcett," Ovington," " Metcalf," " Quevli " and " Watson," and that an " X " was made to the right of the words " Edward S. Orr," and afterwards obliterated by having pencil marks run over and drawn through the same. The evident intention of the voter was to correct a mistake which he had made in putting the cross to the right of Orr instead of Fawcett. We think the contention of the appellant should be sustained that fifteen of these votes should have been counted for Fawcett and eight for Orr, and that Fawcett should therefore have an additional credit of seven votes:

The tenth conclusion of law is as follows:

" That ballots numbered respectively 3, 16, 20, 30, 31, 32, 41, 44, 61, 62, 96, 137, 164 and 224 each bear upon its face marks made with lead pencils which are not authorized or permitted by law and that each of said ballots bears some impression, device, color or thing designated to dis-

tinguish such ballots from other legal ballots; and that each of said ballots bears some device, color or thing whereby it might be designated and distinguished from other legal ballots; that each of said ballots are illegal and cannot be counted for any person for mayor."

With the exception of ballot 61 we think the words or interlineations which were made upon these ballots were all intended by the elector to make his meaning clear, and that they were not of that character or device or impression which is prohibited by the statute. Three of these ballots were for Orr and ten for Fawcett, and Fawcett should be credited with seven additional votes.

It is conceded by the appellant that, under the eleventh conclusion of law, in which ten ballots were rejected, six should have been counted for Orr and four for Fawcett. This concession coming from the appellant, we will not enter into a discussion of those ballots, but from a cursory examination we are inclined to think the concession was correctly made. Orr would therefore be entitled to two votes additional.

The twelfth conclusion is to the effect that ballots numbered respectively 14, 82, 104, 166 and 187 bear upon their face scrawling lines and pencil marks not authorized or permitted by law, and that therefore they fall within the statute inhibiting impressions, devices, etc., and they are held to be illegal and void and are excluded.

The finding of the court is that ballot 14, which was voted for Orr, had a large cross over the amendments; ballot 82, for Orr, had pencil lines over all the amendments; 104, for Orr, pencil lines over all the amendments; 187 and 166, being voted for Fawcett, had pencil lines over all the amendments. It is conceded by the appellant that these votes should have been counted three for Orr and two for Fawcett. Orr should, therefore, have an additional credit of one vote under this finding.

It is not profitable to pursue further the description of these ballots. We have not gone into a minute description of each ballot in controversy because it would render the opinion impracticably long and would serve no good purpose. But sufficient has been said to indicate that if the votes had been counted, which should have been counted under our view of the law, Fawcett should have been declaréd elected by at least twelve majority.

The controversy here is substantially a legal one. It is true that many of the cases cited by the respondent have squarely held that the provisions of the statute in relation to the location of the cross, and other provisions governing the manner of voting, were mandatory, and that if the voter did not employ the means and methods pointed out by the statute, his ballot was void and should not be counted. Thus in *Curran v. Clayton*, 86 Me. 42 (29 Atl. 930), it was held that these provisions of the statute were mandatory and that the ballots were void. An examination of this case, however, shows that the statute of Maine, which was in force at the time of the trial of that cause, was altogether different from our statute, and provided in terms that any distinguishing mark upon a ballot shotfld render it void. There is also an absence from that statute of the liberal provisions which occur in ours in relation to counting the ballot, if the voter's intention can be ascertained. Perhaps it would be well, before proceeding further, to notice our statute. Sections 10 and 11, Laws 1895, p. 393, are as follows:

"Sec. 10. That § 391, vol. 1, Hill's Annotated Codes and Statutes of Washington, is amended to read as follows: Sec. 391. In the canvass of the votes, any ballot or parts of a ballot from which it is impossible to determine the elector's choice, shall be void and shall not be counted; Provided, that when a ballot is sufficiently plain to gather

therefrom a part of the voter's intention, it shall be the duty of the judges of election to count such part.

" Sec. 11. That § 401, vol. 1, Hill's Annotated Codes and Statutes of Washington, is amended to read as follows: Sec. 401. The voting shall be by ballot. No ballot shall bear any impression, device, color or thing designated to distinguish such ballot from other legal ballots or whereby the same may be known or designated. . . . "

Sec. 413 of the General Statutes provides, among other things, that "no ticket shall be lost for want of form, or mistake in initials of names, if the board of judges can determine to their satisfaction the person voted for and the office intended." It is stoutly contended by the respondent that this section of the law is not in force; that the law of 1895 was a complete law within itself, and that all other laws on the subject of elections were repealed by the passage of the law of 1895. But we think this is not the proper construction of the statute. The law of 1895 was largely amendatory of the laws incorporated in the General Statutes, and it in no way undertook to supersede any provisions of the old law, so· that the section above referred to stands with full force and effect. It will therefore be seen that our statute is very different from, and has more carefully guarded the rights of electors by making provision for mistakes which are necessarily incident to this system than, the statutes of some of the other states. Whatever may be said of the Australian system, a glance at the ballot at a general election is sufficient to convince any one that it is not an easy thing for a person of common understanding to intelligently and without great chance of mistake express his wish. A person accustomed more to the plow or the plane than to the pen would almost certainly be confused when he was ushered into a dark booth with this ticket, with its multifarious provisions and its immense dimensions spread out before him. Indeed, it is probable

that the most careful business man who has been accustomed to perusing and executing documents of a business character, will have grave misgivings as to the correctness of his vote when he leaves the booth. And to hold that every misconception of the printed directions of the law would deprive an elector of his vote, would certainly be a holding not within the contemplation of the legislature which passed the statute we have just mentioned, for it has been careful to provide that when a ballot is sufficiently plain to gather therefrom a part of the voter's intention it shall be the duty of the judges of election to count such part. The whole is composed of parts, and if it is the duty of the judges of the election to count a part when the intention in relation to such part can be ascertained, it follows that they must count the whole ballot when the intention in relation to all of the parts can be ascertained. This provision, coupled with the other just above mentioned, that no ballot should be lost for want of form, it seems to us absolutely excludes the idea that any mark which may by mistake be placed upon a ballot shall be considered such a distinguishing mark as will avoid the ballot. If such marks were to be considered distinguishing marks, then it follows that every mistake that a voter makes in departing from the strict letter of the law would constitute a distinguishing mark and would, in substance, nullify the provisions of the statute in relation to the counting of the votes when the intention of the voter could be ascertained and the further provision that no ballot should be lost for want of form.

It is contended by respondent, and is no doubt true, that the distinguishing feature of the Australian ballot system is a careful provision for a secret ballot, and the necessity of this is so obvious to ordinary intelligence that it is needless to discuss it. It is also undisputed that the

elective franchise, though a constitutional privilege and right, must be exercised under such reasonable legislative restrictions as will prevent intimidation, bribery and fraud and secure an honest, untrammeled and genuine expression of public sentiment. It is also true, however, that in the absence of constitutional inhibition all statutes tending to limit the citizen in the exercise of the right of suffrage should be liberally construed in his favor. If his ballot is rejected, it must come within the letter of the prohibition, and when the statute specifically declares under what conditions ballots shall be rejected, courts should not enlarge those conditions, or make other or different conditions from those expressed in the statute grounds for rejecting the ballots. It will be noted that our statute provides only one condition under which a ballot should be rejected, viz.: a ballot from which it is impossible to determine the elector's choice, and, after all, this should and must be the intention of the legislature. The important thing is to determine the intention of the voter and to give it effect. Now, so far as the ballots under consideration are concerned, in ballot 71, for instance, the material part of which we produce here below, the voter placed a cross, as will be seen, opposite, but to the left of, the name of Fawcett and every other candidate on the citizen's ticket.

## SECOND WARD.
### FOURTH PRECINCT.

| REPUBLICAN TICKET. | | | |
|---|---|---|---|
| CITIZENS' TICKET. | | | |
| Vote for one. | | MAYOR. | |
| Republican | | Edward S. Orr. | |
| Citizens' | X | A. V. Fawcett. | |
| Vote for one. | | CITY TREASURER. | |
| Republican | | William A. Sternberg. | |
| Citizens' | X | William Ovington, Sr. | |
| Vote for one. | | CITY CONTROLLER. | |
| Republican | | Edgar V. Benham. | |
| Citizens' | X | Wm. M. Metcalf. | |
| Vote for one. | | CITY PHYSICIAN. | |
| Republican | | Hamilton Allen. | |
| Citizens' | X | Chris. Quevli. | |
| Vote for one. | | COUNCILMAN. | |
| Republican | | John Holgate. | |
| Citizens' | X | Charles P. Culver. | |

It would seem that it would not be hard to determine the intention of the voter so far as this ticket is concerned, and under the statute if the intention could be determined, the ticket should be counted, for that is an express and mandatory provision of the statute. The voter evidently had in mind the placing of a cross opposite the name of the candidate for whom he desired to vote, and it did not occur to him to follow the direction in relation to the position of the cross to the left or to the right of the name. In fact, the marking of the name by a cross is the essential thing after all. The statutes in some of the states provide that the cross shall be to the left of the name; in others they provide that it shall be in a square to the right of the

name; in others, in a circle.  But in all, the preference is
indicated by the cross.  In the case at bar many of the
tickets were marked with the X to the left not only of the
candidates' names, but to the left of the amendments, for
or against, the entire length of the ticket, leaving no doubt
whatever of the intention of the voters.

Again, in relation to that class of tickets that were re-
jected because the names of candidates, either on the citi-
zens' or republican ticket, were erased where the cross was
made opposite and to the right of the name of the candi-
date intended to be voted for, it was evidently the intention
of the voter to make sure the expression of his will, that he
did not intend to vote for the other candidates, that he
erased their names.  The legal effect of placing a cross
opposite and to the right of the name of a candidate would
be to erase the name of the opposing candidate, and the
fact that the voter did erase their names with a pencil,
whether blue or black, could certainly not in any way les-
sen the force given to the expression of his will indicated
by placing a cross opposite the names of those for whom
he did intend to vote.  Under the old system it was the
custom to mark off with a pencil the name of a candidate
on any ticket for whom the voter did not wish to vote.

And so we think in relation to all these ballots in con-
troversy that, notwithstanding these erasures and irregular
markings, the intention of the voter could be certainly
determined from the ballot, and when that can be done the
requirements of the statute are met and the vote should
be counted.  It is true as is stated in some of the authorities
cited by the respondent, that if the voter is not compelled
to follow absolutely the letter of the law in relation to
these expressions, the courts will constantly be called upon
to construe the intention of the voter, but this cannot be
avoided.  They are constantly called upon to construe the

intention of parties in all sorts of transactions. And while it may render a vote somewhat uncertain, yet it will not bring about as much hardship as it would to disfranchise a large number of citizens because of their inability to properly construe technical directions. The desire to have his vote counted will be a sufficient incentive to the ordinary voter to exercise his best judgment and caution in voting.

What we have said in relation to the discovery of the intention of the voter will cover the statute in relation to the other proposition, that no ballot shall bear any impression, device, color or thing designated to distinguish such ballot from other legal ballots, or whereby the same may be known or designated, for if the impression or mark which is made upon the ballot is made as we have before said, not for the purpose of distinguishing the ballot but through an honest mistake in attempting to vote, it does not fall within the inhibition of § 11 above mentioned. Now, the ballots which we have mentioned, where the word "rats" was written across the amendments, and where the names of Wurth and Houser appeared upon them, it seems to us do not fall within the liberal rule which we have laid down. These words were not used, and could not be used, by the voter for the purpose of expressing his preference for a particular candidate; but they were distinguishing marks which were placed upon the ballots for some other purpose. It is reasonable to suppose that the purpose was to distinguish the ballot, although it is not plain to us what the meaning of this provision of the statute is, whether it has reference to the impressions and devices placed upon the ballot by the voter, or whether it has reference to impressions, devices, colors or things originally upon the ballot, which would distinguish it. In most of the states the language of the statute

is, " No elector shall place upon his ballot any impression, device," etc., while that of ours, it will be noted, is, " No ballot shall bear any impression, device," etc.   But whatever the statute may mean, construed in connection with § 10 and § 413 of the General Statutes, it evidently does not mean to render void ballots where marks have been made upon them through mistake in the attempted exercise of the right of franchise.

In *Vallier v. Brakke*, 7 S. D. 343 (64 N. W. 180), a South Dakota case, it was held that where the law provided that the cross should be placed at the head of the party ticket and within a circle, and where the law provided that the cross should be placed at the left of a candidate's name, a cross at the head of a party ticket or one near the circle was a nullity, and that a cross at the right of a candidate's name was not an informality in the form of marking but was unauthorized and of no effect.   This, we think, was rather a harsh ruling, even under the statute of South Dakota, which has not thrown around the voter the guards which our statute has for the purpose of protecting his vote.   The court in that state, however, viewed these tickets in a different light from that in which we are inclined to view them, as will be seen by the following excerpt from the opinion:

" The system devised," said the court, " is so simple that a man of sufficient intelligence to know what a circle is, how to make a cross, and left from right, can find no difficulty in making up the ticket he desires to vote.   He can have no difficulty in expressing his intention in the manner the law has prescribed.   It is not necessary, therefore, to impose upon judges of election or courts the duty of ascertaining the intention of the voter, except in the manner pointed out by the statute, namely, by the marks he has placed upon the ballot in the manner prescribed by law."

This is a rigid and strict construction of the law which

we could not follow, even if the statute under which the opinion was rendered was like ours. The case quoted by the respondent, viz.: *McKittrick v. Pardee*, 65 N. W. 23, from the same state, follows *Vallier v. Brakke, supra*, excepting that this case is not in point for the reason that it was there held that the will of the voter could not with any reasonable certainty be ascertained.

*In re Vote Marks*, 17 R. I. 812 (21 Atl. 962), is a case where the supreme court of Rhode Island was called upon by the governor to construe the election laws. The opinion is rendered without any discussion and evidently without any presentation by counsel. There it was held in so many words that no mark other than a cross can be used; that it must be placed on the margin to the right of the name of the candidate, and that the ballot law makes a cross effectual as a vote only when it is inscribed at the right of the name printed or written on the ballot and opposite thereto. The opinion does not disclose the statute on the subject and we have not been able to obtain it; but it must be concluded, we think, that the statute under which the opinion was rendered does not contain the provisions in relation to counting the votes that are contained in our statute.

*Whittam v. Zahorik*, 91 Iowa, 23 (59 N. W. 57, 51 Am. St. Rep. 317), in addition to the fact that the intention could not be discovered, would not be any authority under our statute, because the court deliberately made the announcement that the intention was immaterial as against the express provisions of the statute. But even in that case, holding as strictly as it does, the court evidently would not have rejected some of the ballots rejected here on account of the devices tending to identification, for it says:

" It is not practicable to adopt a rule in regard to identifying marks which would be applicable in all cases. It

will not do to say that all ballots which bear marks not authorized by law should be rejected. All voters are not alike skillful in marking. Some are not accustomed to using a pen or pencil, and may place some slight mark on the ballot inadvertently, or a cross first made may be clumsily retraced. It is evident that in such cases, and in others where the unauthorized mark is not of a character to be used readily for the purpose of identification, the ballots should be counted, but where the unauthorized marks are made deliberately, and may be used as a means of identifying the ballot, it should be rejected."

In this connection we wish to mention another class of rejected tickets, viz.: where the candidate's name had been marked with a cross opposite, and the opposing candidate's name was also marked with a cross, and the first cross had been erased, or pencil marks had been drawn across it. It is too evident for discussion that the intention of the voter could be ascertained in such a case. He had evidently by mistake placed the cross opposite the name of the candidate for whom he did not intend to vote, the two being placed one above another on adjoining lines, and when he discovered his mistake he made the cross opposite the name of the candidate for whom he did intend to vote and erased the other. While it is true that all these departures from the strict letter of the law constitute a ballot which is not quite so satisfactory or so clean as a ballot made by a person who is fortunate enough to make no mistakes whatever, yet that is not sufficient ground to deprive a voter of his elective franchise.

*Baxter v. Ellis*, 16 S. E. 938, we were unable to find.

*State v. McElroy*, 32 Am. St. Rep. 355, a Louisiana case (44 La. An. 796), holds that the law in relation to all these provisions is mandatory; that they must be strictly followed under the statute of that state or the ballots cannot be counted. They go so far as to hold that the provisions directing the officers who should prepare ballots and

conduct the election are mandatory, and that if they are not followed the election is void. This case is squarely opposed to the doctrine laid down by this court in *Moyer v. Van de Vanter*, 12 Wash. 377 (41 Pac. 60), and here we might notice the contention of respondent that the distinction drawn between the acts of voters and acts of election officers in the latter case settles the proposition that the provisions of the law in relation to the acts of the voters are mandatory. We do not think that the court in that case undertook to pass upon that question. Under the reasoning of that case, doubtless, if the voter had wilfully disobeyed any material provision of the law, his vote would not have been counted, but we do not think it goes beyond that.

The case of *Parvin v. Wimberg*, 130 Ind. 561 (30 N. E. 790), we do not think throws any light on the subject involved. *Bechtel v. Albin*, 134 Ind. 193 (33 N. E. 967), *Sego v. Stoddard*, 136 Ind. 700 (36 N. E. 204), and *Zeis v. Passwater*, 142 Ind. 375 (41 N. E. 796), are all cases decided under statutes affirmatively making the ballots void, where there was no provision for counting the ballots in case the intention could be discovered, and no provision in the statute that no ballot should be lost for want of form. And *Kearns v. Edwards* (N. J.), 28 Atl. 723, was decided under a statute which provides in terms that, "if any ballot voted at any election shall have thereon any device whereby it can be identified, such ballot shall be absolutely void, the intention of the voter cannot be considered, in determining the legality of any ballot, in canvassing the same." So that, under the provision of this statute, of course, the decision could not have been otherwise than as rendered.

It may be conceded, however, that the general tone of the decisions quoted by the respondent and the expressions

used by the courts sustain in the main the contention of strict construction; but there are many other cases holding that these provisions are directory and that they cannot be construed to be mandatory, except where the statute especially provides that the ballot shall be avoided and holding that marks, that are made not with the evident intention of distinguishing the ballot but through mistakes in understanding to vote, are not such marks as under the statute, even where the statute provides that ballots shall be void if such distinguishing marks are made, would avoid the ballots.

In *Houston v. Steele*, 98 Ky. 596 (34 S. W. 6), under a statute similar to ours so far as the arrangement of the ballots is concerned, but without all the liberal provisions of our statute, it was held that under the statute which provided that the cross should be made in the large square, the law was sufficiently complied with by placing the cross just outside the square containing the device; that the use of three cross marks in the large square containing the party device will not invalidate the ballot. In relation to this last ballot the court, in the course of its opinion, says:

" In this connection we notice ballot R 13, marked in the large square of the democratic device with three cross marks in pencil, thus: ' XXX ' The question as to these ballots is not whether the intent of the voter is sufficiently shown—for that is beyond dispute—but whether these marks are ' distinguishing ' marks, signs or devices, within the meaning of the statute. Fortunately we are not without direct authority on this point. Under a similar statute, the court, in *Woodward v. Sarsons*, L. R. 10 C. P. 733, cited in notes to *Rutledge v. Crawford*, 91 Cal. 526 (27 Pac. 779, 13 L. R. A. 762), held that 'the use of two or three crosses, instead of one, or of a peculiar form of cross mark,' will not invalidate the ballot, without evidence of intent to distinguish it."

This case also cites approvingly the case of *State, ex rel. Waggoner, v. Russell,* 34 Neb. 116 (51 N. W. 465, 33 Am. St. Rep. 625), where that court said:

" It is not every mark by means of which a ballot might subsequently be identified which is a violation of the statute. The mark prohibited by law is such a one, whether letters, figures or character, as shows an intention on the part of the voter to distinguish his particular ballot from others of its class. . . . The fact that a number of ballots are, without any evidence of fraudulent intention on the part of the voters, distinguishable from others cast at the same polling place, as, for instance, marked with a pencil or with ink of a different color, does not bring them within either the letter or spirit of the statute."

Sustaining this view we also cite: *Hanscom v. State, ex rel. Lockhart* (Tex.), 31 S. W. 547; *Spurgin v. Thompson,* 37 Neb. 39 (55 N. W. 297); *Jennings v. Brown,* 114 Cal. 307 (46 Pac. 77); *Owens v. State,* 64 Tex. 500; *Davis v. State,* 75 Tex. 420 (12 S. W. 957); *Dennis v. Caughlin,* 22 Nev. 447 (41 Pac. 768); *Tebbe v. Smith,* 108 Cal. 101 (41 Pac. 454, 49 Am. St. Rep. 68); *Kellogg v. Hickman,* 12 Colo. 256 (21 Pac. 325); Paine, Elections, § 498; *Young v. Simpson,* 21 Colo. 460 (42 Pac. 666, 52 Am. St. Rep. 254).

It follows from what we have said that sufficient votes were rejected, which should have been counted, to have given a majority of all the votes cast to the appellant Fawcett.

The judgment of the lower court will, therefore, be reversed, with instructions to declare the appellant, Angelo V. Fawcett, the duly elected mayor of the city of Tacoma.

SCOTT, C. J., and ANDERS, GORDON and REAVIS, JJ., concur.