[No. 12680.  Department Two.  July 7, 1915.]

THE STATE OF WASHINGTON, *on the Relation of Walter G. Hufford, Respondent*, v. STARK M. EDDINGS, *Appellant*.[1]

STIPULATIONS—EFFECT—ELECTIONS—CONTESTS.  In an election contest, insufficiency in the pleadings is waived by a stipulation that the ballots be produced and a recount made by the court.

ELECTIONS—BALLOTS—MARKING—CERTAINTY.  A ballot designating the voter's choice by a cross in the space opposite a candidate's name is not rendered void for uncertainty by the insertion of a zero in the space opposite the name of the candidate's opponent; since the voter's choice reasonably appears from the face of the ballot, under Rem. & Bal. Code, §§ 4905 and 4927, providing for counting such ballots.

SAME—BALLOTS—MARKING—DISTINGUISHING MARKS.  The insertion of a zero, opposite the name of the opponent of a candidate, voted for by making a cross in a space opposite his name, is not such a distinguishing mark as to invalidate the ballot, within Rem. & Bal. Code, § 4914; since it does not appear that it was intended as a distinguishing mark or was made in willful violation of the law.

Appeal from a judgment of the superior court for Skamania county, Darch, J., entered December 24, 1914, upon findings in favor of the plaintiff, in proceedings to contest an election.  Reversed.

*E. E. Shields*, for appellant.

*W. S. Hufford* and *Miller & Wilkinson*, for respondent.

ELLIS, J.—This is an action brought under the provisions of Rem. & Bal. Code, § 4941 (P. C. 167 § 109), to contest an election.

At the general election held on November 3, 1914, the contestee, whom we shall designate as the appellant, and the contestant, whom we shall designate as the respondent, were opposing candidates for the office of county clerk for Skamania county.  Both of their names appeared in legal form upon the official ballots for use in the several election pre-

[1]Reported in 149 Pac. 945.

cincts of that county. The precinct election boards returned as cast for the appellant 450 votes, and for the respondent 449. The county canvassing board confirmed this count, found the appellant elected, and a certificate of election was issued to him. The respondent instituted this contest.

We shall not discuss the sufficiency of the pleadings to present an issue warranting a recount of the ballots, since it was stipulated in open court at the trial below that all of the ballots cast in the county might be produced and a recount made in open court of the ballots cast for the respective parties for the office of county clerk. By this stipulation, the parties, of course, waived any insufficiency in the pleadings.

Pursuant to this stipulation, the court recounted the ballots, rejecting one as illegal and void. On the rejected ballot, which is in evidence as an exhibit, in the square to the right of the name of the appellant, designated as the place for marking, appears a cross, thus $\boxed{X}$ . In the corresponding square, to the right of the name of the respondent, appears a zero mark, thus $\boxed{O}$ . Like marks are similarly placed with reference to the respective names of two or three of the opposing candidates for other offices. Otherwise the ballot, so far as marked at all, is marked regularly with the crosses in the squares to the right of the names of the candidates voted for. The rejection of this ballot resulted in a tie. The court so finding, entered judgment cancelling the appellant's certificate of election and ordering the contest to be decided by lot, as provided by the statute in such cases. This appeal followed.

No question being raised as to the counting of any other ballot than the one above referred to, the sole question presented for our determination is whether the rejected ballot should have been counted for the appellant. The question presents two aspects: (1) Is the ballot void for uncertainty in expressing the voter's choice? (2) Do the zero marks constitute such distinguishing marks as to invalidate the bal-

lot? Both of these questions have, in effect, been answered in the negative by our own decisions.

In *State ex rel. Orr v. Fawcett*, 17 Wash. 188, 49 Pac. 346, the trial court rejected thirty-five ballots because the cross was placed to the left instead of the right of the names of the persons voted for. It rejected some thirty ballots for various irregular markings, of which the following are given in the opinion as samples: On one the cross was placed to the right of the name of Fawcett for mayor and to the right of each of certain candidates for other offices. Horizontal black pencil lines were drawn through the name of Orr for mayor and through the names of opposing candidates for the other offices. Upon that part of the ballot providing for voting for and against certain amendments to the city charter, ten long heavy lines in blue pencil were drawn. Another of these ballots was marked with crosses to the right of the name of Fawcett for mayor and to the right of the names of certain candidates for other offices, and a straight lead pencil mark was drawn through the names of the respective opposing candidates. Others of these ballots were marked with two crosses to the right of the names of Fawcett and those of certain other candidates and two crosses to the right of each place provided for voting for the charter amendments. This court held that all of the foregoing ballots were improperly rejected by the trial court and should have been counted. It also appears that some twenty-seven ballots were variously marked with words which the trial court held to be distinguishing marks invalidating the ballot. Four of these are described in the opinion. One was marked with two crosses, about one and one-half inches apart, to the right of the name of Fawcett, and single crosses to the right of the names of certain other candidates and in the places provided for voting for some of the charter amendments. Following others of the amendments was the word "No," written in pencil, and to the right of that a cross mark. Following one of the amendments appeared the words, "Don't want any king." Another of the

ballots had the word "rats" written on the proposed amend-
ments. Two others had written in the margin names, pre-
sumably of the persons voting them. Touching these twenty-
seven ballots, this court said:

"These four ballots, we think, were properly excluded by
the court, for the words written were not so written with any
intention on the part of the elector to express his choice of
a candidate. They were not honest mistakes and showed a
frivolous and wanton disposition on the part of the elector
to disregard the election laws. The rest of the ballots, how-
ever, under this finding, we think were erroneously rejected.
The words or signs which the court objected to were generally
the word 'no' after amendments, or 'for' after amendments,
or 'against' or 'yes' and pencil lines which were evidently
made with the intention of making plain the expression of the
voter. One ballot had a cross to the right of the name 'Faw-
cett' and a cross to the right of 'Orr', and the cross to the
right of Orr was penciled over and obliterated. This was
ballot 164, and the finding was that the cross was made to
the right of each of the words 'Fawcett', 'Ovington', 'Metcalf',
'Quevli' and 'Watson', and that an 'X' was made to the right
of the words 'Edward S. Orr', and afterwards obliterated by
having pencil marks run over and drawn through the same.
The evident intention of the voter was to correct a mistake
which he had made in putting the cross to the right of Orr
instead of Fawcett. We think the contention of the appel-
lant should be sustained that fifteen of these votes should have
been counted for Fawcett and eight for Orr, and that Fawcett
should therefore have an additional credit of seven votes."

The court quotes as controlling §§ 391, 401 and 413 of
Hill's Code. They are the same as found in our present stat-
ute. Reading by section numbers from Rem. & Bal. Code,
they are as follows:

"§ 4905. In the canvass of the votes, any ballot or parts
of a ballot from which it is impossible to determine the elec-
tor's choice shall be void and shall not be counted: Provided,
that when a ballot is sufficiently plain to gather therefrom a
part of the voters' intention, it shall be the duty of the judges
of election to count such part."

"§ 4914. The voting shall be by ballot. No ballot shall bear any impression, device, color, or thing designated to distinguish such ballot from other legal ballots, or whereby the same may be known or designated." . . .

"§ 4927. . . . but no ticket shall be lost for want of form, or mistake in initials of names, if the board of judges can determine to their satisfaction the person voted for and the office intended."

The court then says:

"It will therefore be seen that our statute is very different from, and has more carefully guarded the rights of electors by making provision for mistakes which are necessarily incident to this system, than the statutes of some of the other states. Whatever may be said of the Australian system, a glance at the ballot at a general election is sufficient to convince anyone that it is not an easy thing for a person of common understanding to intelligently and without great chance of mistake express his wish. A person accustomed more to the plow or the plane than to the pen would almost certainly be confused when he was ushered into a dark booth with this ticket, with its multifarious provisions and its immense dimensions spread out before him. Indeed, it is probable that the most careful business man who has been accustomed to perusing and executing documents of a business character, will have grave misgivings as to the correctness of his vote when he leaves the booth. And to hold that every misconception of the printed directions of the law would deprive an elector of his vote, would certainly be a holding not within the contemplation of the legislature which passed the statute we have just mentioned, for it has been careful to provide that when a ballot is sufficiently plain to gather therefrom a part of the voter's intention it shall be the duty of the judges of election to count such part. The whole is composed of parts, and if it is the duty of the judges of the election to count a part when the intention in relation to such part can be ascertained, it follows that they must count the whole ballot when the intention in relation to all of the parts can be ascertained."

After a lengthy and exhaustive discussion of the authorities from other states, the court concludes by quoting from

the decision of the supreme court of Nebraska in *State ex rel. Waggoner v. Russell*, 34 Neb. 116, 51 N. W. 465, 33 Am. St. 625, the following as a statement of the correct rule under our statute:

"It is not every mark by means of which a ballot might subsequently be identified which is a violation of the statute. The mark prohibited by law is such a one, whether letters, figures or characters, as shows an intention on the part of the voter to distinguish his particular ballot from others of its class. . . . The fact that a number of ballots are, without any evidence of fraudulent intention on the part of the voters, distinguishable from others cast at the same polling place, as, for instance, marked with a pencil or with ink of a different color, does not bring them within either the letter or spirit of the statute."

We have discussed this case thus fully because the defective ballots there counted and those rejected so aptly illustrate the rule of intention there announced. In *State ex rel. Hyland v. Peter*, 21 Wash. 243, 57 Pac. 814, this court, citing the decision in the *Fawcett* case, said:

"In the case last cited we held, that it is not every mark by means of which a ballot might subsequently be identified which is a violation of the statute; that the mark prohibited by law is such a one,—whether letters, figures or characters,—as shows an intention by the voter to distinguish his ballot from others of its class, or some wilful or wanton disregard of the election laws."

A reading of the statutes above quoted clearly supports the rule of intention laid down in the *Fawcett* case and followed in the *Peter* case as the correct criterion by which to determine whether a ballot improperly marked shall be rejected or counted. It is too clear for argument that the statute intends, as these decisions hold, that, if the intention of the voter to cast his vote for a given candidate can be reasonably determined by an inspection of the ballot, it must be so counted; and that, before a ballot irregularly marked can be rejected as bearing an illegal distinguishing mark, it must

reasonably appear from the face of the ballot that the voter intended the irregular marks as distinguishing marks or made them in wilful disregard of the law, and not as mere corrections or as further showing his choice as between candidates in addition to the statutory cross. Judged by this rule of intention, there can be no question that the rejected ballot should have been counted for the appellant. The intention to vote for the appellant is plain on its face. The zero mark opposite the name of the respondent was clearly intended merely to emphasize that intention. It cannot be reasonably gathered from an inspection of the ballot that the zero marks were placed upon the ballot for any other purpose. They were never intended as distinguishing marks. To discard this ballot after having directed the counting of many ballots much more distinctively marked in the *Fawcett* case, would smack of caprice.

The judgment is reversed, and the cause is remanded with direction to restore to the appellant his certificate of election.

MORRIS, C. J., FULLERTON, CROW, and CHADWICK, JJ., concur.