[No. 30237. Department Two. June 30, 1947.]

THE STATE OF WASHINGTON, *on the Relation of Harmar Robeson, Respondent,* v. HARRY CLARK, *Appellant.*[1]

[1]Reported in 182 P. (2d) 68.

*S. Dean Arnold* and *Thomas G. Jordan,* for appellant.

*Homer L. Post,* for respondent.

STEINERT, J.—This is an appeal from a judgment of the superior court for Asotin county declaring that an election in which two candidates for the same office, but running on opposing tickets, had resulted in a tie vote, contrary to a prior canvassing return made by the county election board to the effect that one of the candidates had received a majority of one vote. The action in the superior court was instituted by the relator herein, a qualified elector residing in Asotin county, but not a candidate for the office in question. The appeal to this court was taken by the candidate who, according to the return of the canvassing board, had received the majority vote.

The facts are not in dispute. At the general election held November 5, 1946, appellant, Harry Clark, was the candidate, on the Democratic ticket, for the office of county commissioner, first district, in Asotin county; Homer L. Post was the candidate, on the Republican ticket, for the same office.

After the election, and on November 16th, the county election board duly met to canvass the returns. In the presence of a number of bystanders, they checked the poll books and also counted the absentee ballots, of which there were 155. The result of the canvass and return made by the election board gave appellant, Harry Clark, the Democratic candidate, 1,534 votes, and gave Homer L. Post, the Republican candidate, 1,533 votes.

The present contest relates solely to one of the absentee ballots, an exact copy of which was made at the time of the canvass in order to facilitate its identification in the event any question with respect thereto should subsequently be raised. The factual situation which confronted the board at the time of its canvass, and out of which the instant proceeding arose, can best be elucidated by reproducing the material portions of the particular ballot in question. At the top of the ballot appeared a printed statement reading:

"INSTRUCTIONS: Mark X in the O under party name for whose candidates you wish to vote. If you desire to vote for any candidate of any other party, place X in the □ at the right of the name of such candidate. If you desire to vote for or against any initiative measure or constitutional amendment, place X in the appropriate □ following the initiative measure or constitutional amendment."

These instructions were in accordance with Rem. Rev. Stat. (Sup.), § 5274 [P.P.C. § 521-9].

Following this were three initiative or referendum measures and one proposed constitutional amendment to be voted upon, but on none of which did the particular individual vote.

Immediately underneath these state measures appeared the various political party tickets, which, so far as is pertinent here, were arranged and were marked by the voter as follows:

| DEMOCRATIC TICKET | REPUBLICAN TICKET |
|---|---|
| O | ⊗ (X) |
| **UNITED STATES SENATOR** | **UNITED STATES SENATOR** |
| HUGH B. MITCHELL........□ | HARRY P. CAIN............☒ |
| **REPRESENTATIVE IN** **CONGRESS 4th DISTRICT** | **REPRESENTATIVE IN** **CONGRESS 4th DISTRICT** |
| EARL S. COE..............□ | HAL HOLMES .............□ |
| **STATE REPRESENTATIVE** 10th District Vote for Two | **STATE REPRESENTATIVE** 10th District Vote for Two |
| W. L. WALLS..............□ | SIDNEY S. JEFFREYS.......□ |
| W. NEWTON FRY...........□ | TRACY W. LYMAN..........□ |
| **COUNTY SHERIFF** | **COUNTY SHERIFF** |
| HUGH CURRY .............☒ | ............................□ |
| **COUNTY CLERK** | **COUNTY CLERK** |
| BEN F. TAPLIN.............□ | IVA JARRETT .............☒ |
| **COUNTY AUDITOR** | **COUNTY AUDITOR** |
| IRENE ALLEN .............□ | JOHN P. WELLER..........☒ |
| **COUNTY TREASURER** | **COUNTY TREASURER** |
| ............................□ | W. H. ANDERSON...........□ |
| **COUNTY PROSECUTING** **ATTORNEY** | **COUNTY PROSECUTING** **ATTORNEY** |
| THOMAS G. JORDAN........□ | ............................□ |
| **COUNTY ASSESSOR** | **COUNTY ASSESSOR** |
| DONALD A. FLOCH..........□ | FLOYD M. NAVE............☒ |
| **COUNTY COMMISSIONER** **FIRST DISTRICT** | **COUNTY COMMISSIONER** **FIRST DISTRICT** |
| HARRY F. CLARK...........□ | HOMER L. POST............□ |
| **COUNTY COMMISSIONER** **SECOND DISTRICT** | **COUNTY COMMISSIONER** **SECOND DISTRICT** |
| CARROLL BOGGAN .........□ | ............................□ |

It will be observed that the voter who used this ballot placed an X in the party circle appearing at the head of the Republican ticket; that he placed an X in each of four squares opposite the names of four certain candidates, respectively, running on the Republican ticket, and also an X in the square opposite the name of one certain candidate running for another office, on the Democratic ticket; and that he did not place an X in any of the squares, on either ticket, opposite the names of candidates running for various other offices, including that of county commissioner, first

district, the office with which we are here particularly concerned.

In the course of the canvassing process, the election board reached the ballot here in question, about two thirds of the way down the list of absentee ballots, and a discussion thereupon arose as to how that particular ballot should be counted. The action taken thereon by the board is succinctly told in the testimony of Mr. Bynum Brown, one of the board members, as follows:

"A. Well, I was calling the names off and Ernie Grim [another member of the election board] was checking on it, so I started out to call all the names on the Republican side, and I got down to where it crossed over to Hugh Curry [Democratic candidate for county sheriff]; and somebody raised the point as to how this was voted, and that's where the discussion started. So Miss Ausman [the third member of the board] went in the Auditor's office and got all the literature she could on it, but we could find nothing on this particular voting, so we finally just counted what was marked after each name. THE COURT: You disregarded then the cross in the circle at the top of the Republican party column. You didn't count that as being any good? A. Well, I started out to. THE COURT: Yes, you started to, but in the end— A. No, in the end we disregarded it; that's right."

In consequence of the board's conclusion, as thus testified, the questioned ballot was not counted for either Mr. Clark or Mr. Post, rival candidates for the office of county commissioner. It was at that point that a copy of the ballot was made for subsequent identification, as above related. By virtue of the board's resolve not to count the questioned ballot for either candidate, Mr. Clark was ultimately credited with having received a majority of one vote of the total number of votes cast and counted for that office. Thereafter, the county auditor issued to the appellant a certificate of election.

In the course of the trial in the superior court, the absentee ballots were produced and were opened, under order of the court, for the purpose of identifying the ballot here in question. Upon identification, the ballot was admitted

in evidence. At the request of appellant, the court then permitted him to examine all of the absentee ballots. Upon such examination, appellant found one ballot which presented a situation in reverse of that disclosed by the ballot particularly questioned and previously admitted. This second ballot showed an X in the circle at the head of the Democratic column, a few individual X's opposite the names of certain Democratic candidates, one cross-over to the Republican column, and no X mark opposite the name of either Mr. Clark or Mr. Post, candidates for county commissioner. Appellant thereupon offered that ballot in evidence, not as a basis for contest or attack upon it, but merely for the purpose of showing how the election board would have counted it if the board had followed the same course as it did with reference to the ballot here in question. For reasons which will be stated later, the court sustained respondent's objection to the offer and refused to admit the second ballot in evidence.

At the conclusion of the trial, the court held that the first ballot, here particularly in question, should have been counted for Homer L. Post, thus creating a tie vote between him and Mr. Clark for the office of county commissioner. Judgment was entered accordingly.

Two questions are presented by appellant's assignments of error. The first is whether the trial court correctly interpreted the questioned ballot, under the provisions of the "Instructions," quoted above, and Rem. Rev. Stat., § 5288 [P.P.C. § 521-21].

It is apparent that the instructions do not cover the situation here involved. We turn, then, to the statute just cited, which provides:

" . . . If he [the elector] desires to vote for all the candidates of any political party he may mark a cross 'X' after the name, against the political designation of such party, *and shall then be deemed to have voted for all the persons named as the candidates of such party.* If he desires to vote for any particular candidate of any other political party he may do so by placing after the name of such candidate a mark 'X' . . . Each elector may

prepare his ballot by marking a cross 'X' after the name of every person or candidate for whom he wishes to vote. . . ." (Italics ours.)

It will be noted that the statute peremptorily provides that when a voter marks an X "after the name, against the political designation" of a particular political party, he shall be deemed to have voted for *all* the persons named as candidates of *such* party.

Appellant's contention is that, viewed in the light of all the circumstances, the questioned ballot was sufficiently plain to manifest the intention of the elector to vote only for those candidates opposite whose names he had marked an X, regardless of the fact that he also placed an X in the party circle, or, at least, that it was within the discretion of the election board, under the circumstances, to determine that such was the voter's intention.

It is true, as admonished by Rem. Rev. Stat., § 5294 [P.P.C. § 521-37], that when a ballot is sufficiently plain to gather therefrom a part of the voter's intention, it shall be the duty of the judges of the election to count such part. *State ex rel. Orr v. Fawcett,* 17 Wash. 188, 49 Pac. 346.

However, any attempt to ascertain, in this instance, the voter's intention in marking as he did the particular ballot in question, at once leads into the field of speculation. Did the voter intend to mark an X in the Republican party circle merely to express generally his party affiliation, and then, by placing an X opposite only a limited number of names, including that of one Democratic candidate, further intend to vote only for those particular candidates; or, rather, did he in the first instance intend to vote for all the Republican candidates, except the candidate for sheriff, and then, simply in order to make doubly sure of his vote as to particular Republicans, conclude to place an X after their names? Again, did the voter first place an X in the party circle, and then go down the list of candidates, changing his mind from time to time, crossing over from one party column to another, and finally concluding that he would vote for a limited number of candidates only; or, on the contrary, did he first vote for certain

candidates in whom he was particularly interested, and thereafter place an X in the party circle to indicate that he was thereby voting for all Republican candidates other than as otherwise specifically indicated by him? One guess is as good as another.

It is impossible to divine the particular voter's mind. One thing we do learn, however, from an examination of the entire questioned ballot: Either the voter was in a hurry, or else he was not interested in anything or in anyone other than the political party candidates, for he did not vote upon any of the state measures or upon that portion of the ballot reserved for nonpartisan elections.

 We are of the considered opinion that, in these circumstances, the statute above referred to is controlling; that it is mandatory in the sense that it makes the placing of an X in the circle at the head of a party ticket the equivalent of placing an X opposite the name of each candidate under such party appellation, except that, when the voter marks an X opposite the name, or names, of one or more candidates on another ticket, the ballot to that extent is to be counted for such candidate or candidates; and that the placing of an X in such party circle establishes the legal intent of the voter to vote for each and every candidate on that ticket except as otherwise indicated in the manner above stated. In other words, the legal intent established by marking an X in the party circle is not subordinate to the purported intent manifested by marking X's opposite the names of particular candidates.

Although there are no cases from this jurisdiction directly in point on the question, authority and precedent are not lacking.

In *Whittam v. Zahorik,* 91 Iowa 23, 59 N. W. 57, 51 Am. St. 317, where a similar situation and a statute similar to ours were involved, the court said:

"When the cross is placed in the circle preceding the party appellation, the ballot so marked 'shall be counted as cast for all the candidates named after that title,' excepting, only, that when the name or names of one or more candidates on another ticket are marked, the ballot is to be

counted for the candidates on the other ticket whose names are so marked, but the ticket in which the circle preceding the title is marked is to be counted as cast for all candidates whose names are printed upon it, excepting those for offices for which names on another ticket were marked and counted as stated. *Hence, when a voter has marked his ticket by placing a cross in the circle opposite the title, he does not add to the legal effect of that marking by placing crosses in squares opposite the names of candidates on the same ticket.*

"Whether a ballot should be counted does not depend solely upon the power to ascertain and declare the choice of the voter, but also upon the expression of that choice in the manner provided by the statute."

The language above italicized was quoted in *Spurrier v. McLennan,* 115 Iowa 461, 88 N. W. 1062, following which the court proceeded to say:

"This, we think, is true under the present statute. And we may say, further, that crosses in the squares under such circumstances not only do not add to the effect of the mark in the circle, but they do not detract from it,—they have no consequence whatever, except in the case of a name written in, and that is specially provided for in section 1119, Code."

In *Dickerman v. Gelsthorpe,* 19 Mont. 249, 47 Pac. 999, the court said:

"In our opinion, the cross in the circle at the top of the list is, under the statute, so far as the legal intent is concerned, equivalent to placing a cross opposite the name of each and every candidate in the list under said circle. The legal intent from the cross in the circle is not subordinate to the intent manifested by marking crosses opposite the names of particular candidates in other lists. If these 72 voters had omitted a cross in the circle, and had marked a cross opposite the name of each candidate in the list thereunder, no question would have arisen as to counting these ballots. By marking their ballots as they did, the same result was accomplished. *Whittam v. Zahorik* (Ia.) 59 N. W. 57, sustains this view. We do not agree with the doctrine in *Young v. Simpson* (Col. Sup.) 42 Pac. 666, to the effect that a cross-mark opposite the name of a candidate evinces a particular intent which controls any general intent manifested by marking a cross at the top of the party list. It follows, therefore, that the lower court committed no error

in counting for appellant the 66 ballots which were marked in the circle at the top of the list, and also contained marks opposite the names of certain candidates other than appellant's in the same list."

In *Potts v. Folsom,* 24 Okla. 731, 104 Pac. 353, 28 L. R. A. (N. S.) 460, a statute similar to ours and a situation analogous to the one here were involved. Touching the question there under consideration, the court said:

"It will be noted that the language of the act is mandatory, and that, when the stamp is placed in the circle under the device, such ballot shall be counted as a straight ticket for all the candidates under the column in such circle, and this intention it appears to our mind is emphasized by the language of the instructions noticed. . . .

"To our minds it seems clear that under this statute a stamp in the circle at the head of the list of candidates is the statutory method provided whereby a voter may manifest his intention to vote for every candidate under that stamp. If this is true, and, after having placed the stamp there, the voter has succeeded in voting for all of these candidates, then the placing of additional stamps in front of the different names on that same list would either constitute distinguishing marks or be without any effect whatsoever. These are held not to be distinguishing marks in the *McClelland v. Erwin Case, supra* [16 Okla. 612, 86 Pac. 283]. Hence we conclude they are without effect."

Although counsel in the case at bar have not mentioned the fact, it is but fair and proper to say that in *State ex rel. Orr v. Fawcett,* 17 Wash. 188, 49 Pac. 346, cited and relied upon by appellant, this court referred to the case of *Whittam v. Zahorik, supra,* saying that it

" . . . would not be any authority under our statute, because the [Iowa] court deliberately made the announcement that the [voter's] intention was immaterial as against the express provisions of the statute."

It is true that the syllabus in that case (as found in the Northwestern report, but not as in the Iowa report) furnishes ground for the statement just quoted from the *Orr* case, *supra.* However, we find no statement in the body of the Iowa decision to the effect that the intention of the voter "was immaterial." What that court did say was that

the counting of a ballot did not depend solely upon the power to ascertain and declare the choice of the voter, but also upon the expression of that choice in the manner provided by statute. With that statement we are in full accord, and we further reiterate that the statute is controlling and mandatory in the sense and to the extent above declared.

Appellant cites, in support of his contention, the case of *Young v. Simpson,* 21 Colo. 460, 42 Pac. 666, 52 Am. St. 254, and says in his brief that it is "the only outside decision discoverable which treats the question at bar and involves a statute sufficiently similar as far as the present issues are concerned to be in point."

We concede that the facts in the *Young* case are quite similar to those in the case at bar and that the decision therein tends to support appellant's contention. However, the Colorado statute contained no provision such as that contained in ours, to the effect that when a voter marks a "cross 'X' " after the name, against the political designation of a particular political party, he "shall then be deemed to have voted for all the persons named as the candidates of such party." Moreover, the *Young* case has been criticized in a number of others, including some of those which we have cited above. With all due respect to the court which delivered that opinion, we decline to follow it.

Appellant makes the further contention that, in any event, it was within the discretion of the election board, under the existing circumstances, to disregard the mark X within the party circle, the inference being that, in the exercise of its best judgment, any mistake the board may have made was simply a mistake of judgment, which should not be set aside by the court.

Our answer to this contention is the same as that given by the trial court: The mistake made by the board was not one of judgment, but, rather, a mistake as to the law as we have herein interpreted it. The law having established the effect of an X mark within the party circle, the election board could not lawfully disregard it.

The trial court rightly decided that the questioned ballot should have been counted for Mr. Post.

In passing, it should be stated that the 1947 legislature abolished the type of so-called "straight party voting." Chapter 77, p. 181, Laws of 1947. That act, however, was not in effect at the time of the election here involved.

■ The second question presented upon the appeal is whether the trial court properly excluded the second ballot, offered in evidence by the appellant. It will be recalled that the situation with respect to that ballot was the reverse of that which obtained with regard to the questioned ballot heretofore discussed.

Upon this assignment of error, appellant argues that it should be presumed that the board, having adopted a particular policy in the matter of counting the ballots, would count all ballots accordingly, whether rightly or wrongly; that if such presumption be indulged, then the election board failed to count a vote for Mr. Clark, just as it had failed to count one for Mr. Post; and that the net result would be unchanged, because appellant would still have a majority of one vote.

One fault in appellant's reasoning is that there is no evidence as to when the board adopted its alleged policy, whether before or after it had counted the ballot offered in evidence by the appellant. As stated above, the questioned ballot offered by respondent and admitted in evidence was about two thirds of the way down the list of absentee ballots. Whether the second ballot, offered by appellant, had theretofore been reached, considered, and counted one way or another, is not made apparent by the evidence.

The decisive answer to appellant's contention, however, is that there was no evidence as to how the rejected ballot was counted. On the contrary, two of the members of the board, when interrogated on that subject by appellant's counsel, stated categorically that they did not know how that ballot was counted. No witness could even identify the ballot. Had this particular ballot been called to the attention of the election board, some ruling could have been made thereon, and such ruling would now be known. But no such action was taken, and we are asked simply to presume that it was not counted for Mr. Clark. Moreover,

there is no evidence in the record as to the adoption at any time, by the election board, of any rule or policy to be followed in counting ballots of the same or similar nature as that of the questioned ballot or its counterpart.

Appellant cites and relies upon *State ex rel. Hyland v. Peter,* 21 Wash. 243, 57 Pac. 814, in which the court stated that, had a particular rejected ballot been counted, the court would not have been inclined to hold that the counting was error, but that, in any event, it could make no difference in the particular case, because another ballot, similarly marked, and having an opposite effect, had likewise been rejected, and hence the result would be unchanged.

That case is not in point, because, there, all the disputed ballots, 515 in number, were, with the consent of the parties, examined by the court and a complete count thereof made by that tribunal, whereas, here, only one ballot was the subject of the litigation, and that ballot was the only one as to which the count was definitely established. The ballot offered in evidence by the appellant and rejected by the court had no proper place in the issues presented at the trial. The court's action in rejecting it was correct.

The judgment is affirmed.

MALLERY, C. J., ROBINSON, JEFFERS, and HILL, JJ., concur.